HARVARD SQUARE DEFENSE FUND, INC., & others[1] vs.
PLANNING BOARD OF CAMBRIDGE & others.[2]

No. 88-P-1000.

Middlesex.   May 9, 1989. — June 22, 1989.

Present: GREANEY, C.J., DREBEN, & FINE, JJ.

Zoning, Appeal, Special permit, Person aggrieved. Practice, Civil, Zoning
appeal, Parties, Standing. Municipal Corporations, Officers and agents.
Words, "Person aggrieved," "Party in interest."

Neither an incorporated organization with a general civic interest in the
enforcement of zoning laws and in the preservation of the Harvard Square
area of Cambridge, nor an unincorporated citizens' association, nor
fourteen individual plaintiffs, nor a member of the Cambridge city council
had standing under G. L. c. 40A, § 17, to challenge the Cambridge
planning board's grant of special permits for the construction of two
office-retail buildings in Harvard Square, where the plaintiffs' concerns,
essentially involving the expression of aesthetic views and speculative
opinions, did not establish a plausible claim of a definite violation of a
private right, property interest or legal interest; where none of the plain-
tiffs fell within the definition of a "party in interest," as that term is
defined in G. L. c. 40, § 11, which would have entitled them to a
presumption of standing, where the city councilor who joined as a plain-
tiff was not a municipal officer whose duties related to the building code
or zoning; and where two of the individual plaintiffs who were members
of a citizens' committee to advise the planning board, were not entitled
to standing as municipal officers, nor, as dissenters from the committee
report to the board supporting the construction project, did they acquire
independent standing to oppose the committee's vote. [492-497]

---

[1] The additional plaintiffs comprise the Neighborhood Ten Association,
a voluntary association; fourteen individuals; and a member of the Cam-
bridge city council.

[2] The other defendants include the individual members of the planning
board; Daniel Calano, trustee of Brattle Square Associates Trust; and Brattle
Square Associates. The planning board is the special permit granting author-
ity in Cambridge.

CIVIL ACTION commenced in the Superior Court Department on April 13, 1988.

The case was heard by *R. Malcolm Graham*, J.

*Thomas B. Bracken* for the plaintiffs.

*Eric W. Wodlinger (Kenneth W. Gurge* with him) for Daniel Calano.

*James W. Stoll (Sheldon M. Drucker* with him) for Brattle Square Associates.

GREANEY, C.J. A Superior Court judge allowed the defendants' well-supported motion for summary judgment under Mass.R.Civ.P. 56, 365 Mass. 824 (1974), concluding that the plaintiffs lacked standing under G. L. c. 40A, § 17, as amended through St. 1987, c. 498, § 4, to challenge the Cambridge planning board's grant of special permits for the construction of two office-retail buildings in the Harvard Square area of Cambridge.[3] We agree with the judge that none of the plaintiffs has the required standing as a person aggrieved or otherwise as a municipal officer. Consequently, we affirm the judgment.

Section 17 of G. L. c. 40A provides that "[a]ny person aggrieved" by a decision of a zoning board of appeals or special permit granting authority may appeal the decision by bringing an action in the Superior Court. However, "only a limited class of individuals — those whose property interests will be affected — is given the standing to challenge the board's exercise of its discretion." *Green* v. *Board of Appeals of Provincetown*, 26 Mass. App. Ct. 469, 479 (1988), *S.C.*, 404 Mass. 571 (1989).[4] Individual or corporate property owners acquire stand-

---

[3] The buildings will be located at 38-40A Brattle Street and 12-14 Mifflin Place. The two special permits approved by the planning board allowed the buildings to exceed the sixty-foot limit permitted as of right and allowed a reduction in the otherwise required number of parking spaces. Although the record does not indicate the architecture or design of the buildings, we were advised by the defendants at oral argument that those factors were carefully considered to ensure that the buildings would blend in with historic buildings nearby and complement the ambiance of Harvard Square.

[4] The Supreme Judicial Court, disagreeing with the decision of this court in *Green*, held that the traditional definition of "aggrieved" applies to appeals from requests for enforcement of zoning ordinances. Its decision (issued after the briefs were submitted in the present case) supports the traditional narrow definition of standing under § 17, in contrast to the broader definition urged by the plaintiffs in this case (see discussion *infra*).

ing by asserting a plausible claim of a definite violation of a private right, a private property interest, or a private legal interest. See *Shriners' Hosp. for Crippled Children* v. *Boston Redevelopment Authy.*, 4 Mass. App. Ct. 551, 555 (1976); *Prudential Ins. Co. of America* v. *Board of Appeals of Westwood*, 18 Mass. App. Ct. 632, 633 (1984); *Green* v. *Board of Appeals of Provincetown*, 26 Mass. App. Ct. at 479-480. Under § 17, certain municipal officers or boards have standing without the necessity of showing that their interests have been harmed by the decision.

We agree with the judge that the plaintiffs' concerns about diminished open space, incompatible architectural styles, the belittling of historical buildings, and the diminished enjoyment of the "village feeling" of Harvard Square express matters of general public concern which were appropriately addressed by the extensive administrative proceedings held in this case. These matters, essentially involving the expression of aesthetic views and speculative opinions, do not establish a plausible claim of a definite violation of a private right, property interest, or legal interest sufficient to bring any of the plaintiffs within the zone of standing.[5]

Some of the plaintiffs identify area parking problems as an indication of a legally protected right which will be violated by the reduction allowed in the number of parking spaces which would have been required by the zoning ordinance. This claim has not been substantiated. It is to be noted that the project is located across from a Massachusetts Bay Transportation Authority station and that the permits are conditioned upon special

---

[5] In support of the argument that matters of general public interest confer upon them aggrieved person status, the plaintiffs assert that an expansive view of standing is necessary because the board's power is great and the Zoning Act (G. L. c. 40A, as appearing in St. 1975, c. 808, § 3) envisions the consideration of public opinion in the board's decision. See *Boston Edison Co.* v. *Boston Redevelopment Authy.*, 374 Mass. 37, 44-45 (1977). However, as the court in *Boston Edison* explained, "when an issue involves an area of law governed by a specific statute with a standing requirement, that issue is governed by the standing requirements of the particular statute and not by a general grant of standing . . . ." *Id.* at 46. The court cited G. L. c. 40A, § 17, as an example of such a specific statute.

arrangements designed to limit the use of automobiles by tenants and other patrons of the buildings.[6] The plaintiffs have no assigned right to park on any street. Parking is by resident sticker, and the plaintiffs have legal recourse if unstickered vehicles park on their streets. Additionally, because of the special conditions annexed to the permits in order to discourage the use of automobiles, it is at best speculative whether the project will cause any increased traffic or parking problems.

The plaintiffs' reliance on *Bedford* v. *Trustees of Boston University*, 25 Mass. App. Ct. 372, 376-378 (1988), to support a violation of a private legal interest is misplaced. In *Bedford*, the automobiles causing the parking and congestion problems on the plaintiff's street were proved to belong to Boston University students utilizing the locus. Here, the developers, without seeking special permits, could have increased the floor area ratio from the eighty percent approved by the board to one hundred percent and not required the buildings' tenants to subsidize "T" passes; thus the plaintiffs can offer no direct facts to show that users of the buildings constructed under the special permits will generate traffic, or use parking spaces, in excess of what occupants and visitors of a building constructed under a permitted use, not subject to such special conditions, would generate. Put another way, the plaintiffs' affidavits show

---

[6] A condition of the permit for the building to be located at 38-40A Brattle Street reads as follows:

"The permittee shall implement a subsidized 'T' pass program which shall be made mandatory for all tenants of the building through the lease agreements executed and shall consider and encourage other methods to encourage transit use and discourage the use of autmobiles by tenants and customers of tenants of the building. The details for such a transit use plan, including the 'T' pass program, shall be submitted to the Planning Board for review prior to issuance of an occupancy permit for the building and shall be made a condition of this Special Permit."

A condition of the permit for the building to be located at 40 Brattle Street and 12-14 Mifflin Place reads as follows:

"The permittee shall cooperate in any study undertaken by the City to review improvements which may be necessary in the vicinity of the intersection of Mifflin Place and Mount Auburn Street. The permittee is strongly encouraged to participate in a subsidized 'T' pass program and other programs designed to encourage transit use into the Square."

only that any "increase in traffic [and parking] is problematical and might be little, if any, greater than that from [another business use] which could lawfully be erected on the . . . land without [the need for a special permit]." *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 430 (1949).

The plaintiffs point out that "[p]arties in interest," as that term is defined in G. L. c. 40A, § 11, as appearing in St. 1979, c. 117, enjoy a presumption of standing.[7] However, as the judge correctly determined, none of the named plaintiffs falls within the definition of a "party in interest." See and compare *Murray* v. *Board of Appeals of Barnstable*, 22 Mass. App. Ct. 473, 476 (1986). The fact that one or two of the plaintiffs received notice of the planning board hearing as an accommodation to their requests for such notice does not make those plaintiffs "parties in interest."[8] Finally, none of the plaintiffs, including the Harvard Square Defense Fund, Inc., and the Neighborhood Ten Association, owns or occupies property in the same zoning district, and, therefore, none of the plaintiffs can demonstrate a "legitimate interest in preserving the integrity of the district" in which the buildings will be permitted uses. *Ibid.*

In order for the Harvard Square Defense Fund, Inc., to have standing, it must establish some harm to a corporate legal right. *Amherst Growth Study Committee, Inc.* v. *Board of Appeals of Amherst*, 1 Mass. App. Ct. 826, 826-827 (1973). A mere statement of corporate purpose which expresses a general civic interest in the enforcement of zoning laws, or in the

---

[7] "Parties in interest" are (1) abutters, (2) owners of land directly opposite the locus on any street, and (3) abutters to abutters within 300 feet of the project line. G. L. c. 40A, § 11. "Parties in interest" are entitled to notice of the planning board's hearings.

[8] We reject the plaintiffs' attempt to rely upon certain provisions of the Cambridge zoning ordinance and rules of practice and procedure of the Cambridge zoning board of appeal, to establish presumptive standing. See *Brown* v. *Neelon*, 335 Mass. 357, 359-360 (1957); *Lawrence* v. *Falzarano*, 380 Mass. 18, 25 n.10 (1980). This argument was not made to the judge and cannot be raised for the first time on appeal. *John B. Deary, Inc.* v. *Crane*, 4 Mass. App. Ct. 719, 724 (1976).

preservation of Harvard Square, is not enough to confer standing. *Id.* at 827. *Chongris* v. *Board of Appeals of Andover*, 17 Mass. App. Ct. 999, 999 (1984). Likewise, the unincorporated Neighborhood Ten Association could not acquire standing by itself.[9] Individual members who are aggrieved could be plaintiffs, but none have joined the lawsuit.

Finally, the city councilor who joined as a plaintiff does not have standing because he was not a municipal officer with "duties to perform in relation to the building code or zoning." *Carr* v. *Board of Appeals of Medford*, 334 Mass. 77, 80 (1956). The fact that this plaintiff in his capacity as a city councilor votes on amendments to the zoning ordinance and participated in the proceedings leading to creation of the Harvard Square overlay district does not distinguish his situation from that of the plaintiff· in the *Carr* case, who was a city councilor with similar duties. As was stated in *Carr*: "[T]he plaintiff . . . as a member of the city council has no [sufficient] interest in the subject of the city's building code or zoning ordinances that he can, acting alone or with other members of the council in their individual capacity and not as a body, maintain an appeal under [§ 17]." *Id.* at 80.[10]

Similarly, the two plaintiffs who are members of the Harvard Square advisory committee are not municipal officers. Cf. *District Attorney for the No. Dist.* v. *Board of Trustees of Leonard Morse Hosp.*, 389 Mass. 729, 732-733 (1983). We are not convinced that an unincorporated citizens advisory group without traditional governmental powers is a municipal board. See *id.* at 733. Based upon the limited information in the record, it appears that members of the advisory committee

---

[9] An unincorporated association cannot be a party to a lawsuit. See *Save the Bay, Inc.* v. *Department of Pub. Utilities*, 366 Mass. 667, 675 (1975). Moreover, there is no basis in the record to certify the Association as a representative plaintiff in a class action under Mass.R.Civ.P. 23.2, 365 Mass. 769 (1974). See *Doe* v. *The Governor*, 381 Mass. 702, 704-705 (1980); *Mikolinski* v. *Burt Reynolds Production Co.*, 10 Mass. App. Ct. 895, 895 (1980).

[10] Similarly, the councilor's status as one member of the ordinance committee of the city council does not give him standing as an individual to maintain an appeal under § 17.

review, advise, guide, and otherwise comment upon development proposals within the Harvard Square overlay district in a report submitted to the planning board. The planning board then gives the report "due consideration" in the formulation of its decision.[11] A purely advisory committee like this one does not appear to qualify for standing independent of the planning board. Ultimately, regardless of whether the advisory committee is a municipal body, because the two members who are parties to this suit are acting in their individual capacities, their status falls squarely within the *Carr* analysis stated above. The advisory committee's final report submitted to the planning board "strongly encourage[d] development of the . . . projects as proposed . . . . " The two dissenting members have no independent standing in opposition to the committee vote. *State Board of Retirement* v. *Contributory Retirement Appeal Board*, 342 Mass. 58, 59 (1961). *Sharpe* v. *Registrars of Voters of Northampton*, 342 Mass. 620, 622 (1961).

*Judgment affirmed.*

---

[11] Apparently, the advisory committee was established by a city ordinance which presumably enumerates the committee's purposes, duties, and powers, if any. However, the applicable ordinance was not made part of the record below and we cannot take judicial notice of it now. See *Planning Board of Springfield* v. *Board of Appeals of Springfield*, 338 Mass. 160, 162 (1958), and cases cited.