THOMAS CHOATE & another[1] *vs.* ZONING BOARD OF APPEALS
OF MASHPEE[2] & others.[3]

No. 04-P-1646.

Barnstable. October 5, 2005. - September 15, 2006.

Present: PERRETTA, CYPHER, & KANTROWITZ, JJ.

*Zoning,* Appeal, Person aggrieved, Variance. *Practice, Civil,* Zoning appeal,
Parties, Standing.

A Superior Court judge hearing an appeal from a local zoning board's grant of
variances to the defendant landowners neither applied an erroneous
standard in determining the plaintiffs' standing to appeal as "persons ag-
grieved" under G. L. c. 40A, § 17 [382-383], nor did anything other than
confine himself to the materials before him on the defendants' motion to
dismiss in concluding that the plaintiffs' general aesthetic concerns and al-
legations of harm to the value of their abutting properties were insufficient
to confer standing [383]; however, the judge erred in concluding that the
plaintiffs failed to offer evidence sufficient to show that they had standing
on the basis of their concerns about the effects of the variances on local
traffic [383-387], and where the circumstances presented on the record did
not constitute lawful justification for the grant of the variances, this court
directed entry of a judgment for the plaintiffs [387].

CIVIL ACTION commenced in the Superior Court Department on
July 3, 2003.

A motion to dismiss was heard by *Richard F. Connon,* J.

*Jeffrey M. Graeber* for the plaintiffs.

*Mark W. Corner* for Anthony Shuman & another.

PERRETTA, J. When the defendant landowners were granted

[1]Patrick J. Dempsey.

[2]Although counsel for the zoning board of appeals of Mashpee filed an ap-
pearance in the Superior Court, he did not thereafter file any "opposition
separate from that already filed by the co-defendants" or join in the
defendants' brief filed with us.

[3]Anthony Shuman and, originally, Dorothy Kagan. When Kagan died dur-
ing the pendency of this action, Old Seabury Realty LLC, the successor to
Kagan's interest in the property, was substituted as a defendant.

variances by the zoning board of appeals of Mashpee (board) allowing them to build a single family residence on each of two undersized adjoining lots, the plaintiffs, who are an abutter and an abutter to an abutter, brought this action pursuant to G. L. c. 40A, § 17. Ruling on cross motions, the judge denied the plaintiffs' motion for summary judgment and allowed the defendants' motion to dismiss, based on the plaintiffs' lack of standing. We reverse the judgment of dismissal.

1. *The property.* Our description of the parties' properties is based upon the pleadings, the attachments to the parties' cross motions, and the judge's memorandum of decision issued after a consolidated hearing on both motions. These materials indisputably show that the parties' properties are located within a residential subdivision consisting of eighteen lots, seventeen of which are situated along Mashpee Pond. The only access to the subdivision is from Route 130 onto Pickerel Cove Road (the Road) which runs northeasterly, intersecting with Route 130 at its southwestern terminus and ending in a cul-de-sac to the northeast. The plaintiffs' and the defendants' lots are situated on Pickerel Cove Circle (the Circle). The Circle is an "unpaved" road that branches eastward off the Road, then curves and heads north to rejoin the Road, roughly forming two sides of a triangle. The only means of access to and from the lots is from Route 130 onto the Road leading to the Circle.

As shown on plans of the subdivision, the four lots in question front on the eastern side of the unpaved northward leg of the Circle and are backed by Mashpee Pond. Generally speaking, the geometry of the parcels is that of four rectangles arranged in a row from south to north.

The undersized lots, known as lots 17A and 18A, are owned by the defendants Anthony Shuman and Old Seabury Realty LLC (Old Seabury). Lot 18A is the southernmost parcel, while lot 17A is its immediate neighbor to the north. The plaintiffs, Patrick Dempsey and Thomas Choate, are the owners of lots 16A and 15A, respectively. Dempsey's lot, 16A, is the northerly abutter to lot 17A, and Choate's lot, 15A, the northernmost of the four, abuts that of Dempsey and is within 300 feet of lot 17A.

As originally created in 1956 and reconfigured in 1964, each of the eighteen lots in the subdivision was between one-half and two acres in area. In or about 1983, the Mashpee zoning by-law was amended to require a minimum lot size of 80,000 square feet in the zone in which the subdivision is situated. At that time, the lots in the subdivision were "grandfathered," that is, deemed buildable because they qualified as such prior to the amendment. About three years later, however, the by-law was amended and the "grandfather" provision removed. Consequently, each of the defendants' lots, the two largest in the subdivision, became unbuildable due to insufficient lot areas.[4] However, the combined area of the two lots is sufficient to support one house without need for a variance.[5] About six years after the removal of the "grandfather" clause from the by-law, the defendants petitioned the board for variances from "land space requirements, frontage relief and road access to have [each of their lots] deemed buildable."

2. *The board's decisions.* In granting the defendants' requests for a variance on each of their two adjoining lots,[6] the board made six specific findings:

> "1. that there are circumstances relating to the shape and topography that affect the subject lot and not the district in which it [is] located.
>
> "2. that a literal enforcement of the By-laws would involve hardship to the Petitioner.

---

[4]Evidently, the plaintiffs' homes were built at a time when they did not run afoul of lot size restrictions.

[5]General Laws c. 40A, § 6, creates a grandfathering provision that protects undersized lots if the lots were conforming when they were created. However, that protection evaporates if the lots are, as here, held in common ownership. "[A]djacent lots in common ownership will normally be treated as a single lot for zoning purposes so as to minimize nonconformities." *Preston* v. *Board of Appeals of Hull,* 51 Mass. App. Ct. 236, 238 (2001), quoting from *Seltzer* v. *Board of Appeals of Orleans,* 24 Mass. App. Ct. 521, 522 (1987). See *Heavey* v. *Board of Appeals of Chatham,* 58 Mass. App. Ct. 401, 404 (2003). Although many communities have by-laws that extend the grandfathering provision to protect lots held in common ownership, Mashpee revoked its such by-law in 1986. No argument is made that G. L. c. 40A, § 6, operates to preserve the grandfathered status of the lots. See *Rourke* v. *Rothman,* 64 Mass. App. Ct. 599, further appellate review granted, 445 Mass. 1108 (2005).

[6]The board rendered separate but identical decisions for the two lots.

"3. that relief may be granted without detriment to the public good.

"4. that relief may be granted without derogating from the intent or purpose of the By-laws.

"5. that the Board determined that without relief the lot could not be used for a residence, the purpose for which it had been laid out and for which the balance of the undersized lots in the subdivision were being used.

"6. that the lot has been maintained as a separate buildable lot on the Assessor's Records and is subject to betterments from the Water District."

One of the conditions to each variance is that "all instructions and requests from the [Mashpee] Fire Department detailed in the attached memo from Deputy Sheldon Hamblin must be adhered to and executed." Hamblin's memo reads as follows:

"In regards to [the board's] letter of May 19, 2003, I have reviewed the plot plans, and viewed the property which I believe to be in question.

"Article 174-32 of the Town by-laws states, at least in my book, that even for a single family dwelling, the access road must have an improved surface, with a width of 12 feet, and a cleared width of 16 feet. If the road I traveled was Pickerel Cove Circle, it does not meet the requirements of the existing by-law.

"Application of this by-law is significant in this area, as the closest hydrant is 1/2 mile from the entrance to Pickerel Cove Road at Rt. 130. There is another half mile to the property. This means that for any structure fire, we will have to engage in a tanker-shuttle application for water supply. These roads are greatly improved over what they were many years ago, but the dwellings being built are also significantly larger.

"In my opinion, it is questionable if one of our engines could make it down the road without receiving any damage from tree limbs. After arriving at the scene, ability to apply water to a fire would be impeded due to a line being

required to be placed in the road on the way in, and a nurse tanker having to be set up at the end of the road."

3. *The procedural history.* After the board's grant of the variances, the plaintiffs appealed to the Superior Court pursuant to G. L. c. 40A, § 17, and sought summary judgment. They claimed that there was no basis under G. L. c. 40A, § 10, for granting the variances and that the fact that the defendants' lots "have been taxed as separate buildable lots since 1955" did not justify the board's action. The defendants' motion to dismiss was based on the assertion that neither of the plaintiffs was a "person aggrieved" under G. L. c. 40A, § 17, inserted by St. 1975, c. 808, § 3, and, therefore, lacked standing to appeal.

The materials appended to the plaintiffs' motion included their affidavits as well as the board's decision with Hamblin's attached memo, the defendants' responses to requests for admissions and answers to interrogatories, and an affidavit of Susan Kagan Lange, a member of Old Seabury. Lange had submitted her affidavit along with attached copies of the subdivision plans in support of the defendants' motion to dismiss. In support of their motion to dismiss, the defendants relied upon the materials attached to the plaintiffs' motion for summary judgment as well as selected portions of the plaintiffs' deposition testimony and Article 174-32 of the zoning by-law.

As shown by the pleadings and all the attachments thereto, the plaintiffs' claims of aggrievement are based upon their concerns that two additional houses fronting on the unpaved portion of the Circle will increase the volume of traffic, exacerbate problems associated with traffic driving in opposite directions, hasten the deterioration of the unpaved portion of the Circle, impair the aesthetic qualities of the natural and undeveloped environs, and diminish the value of their properties. Dempsey, the owner of lot 16A and the immediate abutter to lot 17A, also claims that a house and septic system on lot 17A would be too near his property, septic system, and well.

4. *The applicable law.* We summarize the applicable law. Only "person[s] aggrieved" within the meaning of G. L. c. 40A, § 17, have standing to seek judicial review of a decision of a zoning board of appeals. See *Marashlian* v. *Zoning Bd. of*

*Appeals of Newburyport*, 421 Mass. 719, 721 (1996). A person is "aggrieved" by the board's action if the person asserts "a plausible claim of a definite violation of a private right, a private property interest, or a private legal interest." *Harvard Sq. Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. 491, 493 (1989). The interest must be one that the applicable regulatory scheme, c. 40A, recognizes. See *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 430-431 (1949); *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. 20, 27-28 (2006).

A direct abutter (here, Dempsey) and an abutter to an abutter within 300 feet of the subject property (here, Choate) are rebuttably presumed to be "persons aggrieved." See *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. at 721 (direct abutters); *Sheehan* v. *Zoning Bd. of Appeals of Plymouth*, 65 Mass. App. Ct. 52, 54 (2005) (abutters to abutters). See also G. L. c. 40A, § 11; *Marotta* v. *Board of Appeals of Revere*, 336 Mass. 199, 204 (1957); *Watros* v. *Greater Lynn Mental Health & Retardation Assn.*, 421 Mass. 106, 110-111 (1995). Once the presumption of standing is challenged with evidence contrary to the factual premise on which the claim of aggrievement is based, the presumption is eliminated. See *Marinelli* v. *Board of Appeals of Stoughton*, 440 Mass. 255, 258 (2003). The question of standing is then to be "determined on all the evidence with no benefit to the plaintiffs from the presumption." *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. at 33-34, quoting from *Marotta* v. *Board of Appeals of Revere*, 336 Mass. at 204. With the elimination of the presumption of standing, the plaintiffs are then required to "put forth credible evidence to substantiate [their] allegations." *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. at 721. That evidence "must provide specific factual support for each of the claims of particularized injury the plaintiff has made . . . [and] must be of a type on which a reasonable person could rely to conclude that the claimed injury likely will flow from the board's action." *Butler* v. *Waltham*, 63 Mass. App. Ct. 435, 441 (2005). "Conjecture, personal opinion, and hypothesis," *ibid.*, will not suffice, and the question of standing then becomes, essentially, a question of fact for the trial judge whose decision should not

be overturned unless shown to be "clearly erroneous." *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. at 721-722.

Here the defendants supported their motion to dismiss with materials outside the pleadings and challenged the accuracy rather than the sufficiency of the facts alleged by the plaintiffs for purposes of standing. Consequently, the allegations in the plaintiffs' unverified complaint were entitled to no presumptive weight, and the plaintiffs were required to produce credible evidence to support their claim of standing. See *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. at 33-34.

5. *The judge's decision.* In allowing the defendants' motion to dismiss, the judge concluded that they had successfully rebutted the plaintiffs' presumed standing. Proceeding to determine the question of the plaintiffs' standing based on all the materials before him, the judge ruled that the plaintiffs' concerns about the adverse effects of the variances on aesthetics and natural space were insufficient, as matter of law, to confer standing. He also ruled that the plaintiffs' assertions that the variances would cause a drop in the value of their properties were subjective speculations, which did not support their claim of aggrievement. The judge rejected Dempsey's claim that the location of a building on lot 17A would be too close to his property line and septic system, on the stated basis that the defendants' proposed projects "must comply with the current setback requirements set forth in the Bylaw, which is no less than 25 feet from the lot line separating Lot 17A from Dempsey's property."

More particularly, the judge noted that the plaintiffs had not proffered any expert evidence to substantiate their concerns about the inability of the Circle to accommodate an increase in traffic to and from the defendants' lots and that such increased traffic would cause a deterioration of the unpaved portion of the Circle, thereby making access to the houses on the Circle by the fire department difficult, if not impossible, in the event of a fire or other emergency. Having concluded that the plaintiffs lacked standing to pursue their appeal, the judge denied their motion for summary judgment.

6. *Discussion.* On appeal the plaintiffs argue that the judge applied an erroneous legal standard in determining that they

were not aggrieved, erroneously denied them a "factual hearing," and, instead, "weigh[ed] . . . disputed facts."

As to their first contention, the plaintiffs claim that the judge applied the legal standard rejected in *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. at 724, that is, that a plaintiff must show a "substantial likelihood of harm greater than that which could result from a use of the property permissible as of right." *Ibid.*, citing *Barvenik* v. *Aldermen of Newton*, 33 Mass. App. Ct. 129, 131-133 (1992). The plaintiffs fail to point to any portion of the judge's nine-page memorandum of decision to support their contention, and we could find nothing in the judge's citations to precedent or his reasoning to suggest that he applied an erroneous standard in determining that the plaintiffs were not aggrieved and, therefore, lacked standing to appeal.

Further, we see nothing in the judge's memorandum of decision in respect to the plaintiffs' second and third contentions that suggests that he did anything other than confine himself to the materials before him on the defendants' motion to dismiss in determining whether the plaintiffs had sustained their burden of proof on the issue of standing. Confining himself to those materials, the judge determined that the plaintiffs' allegations of general aesthetic concerns in respect to the impairment of the natural and undeveloped environs were insufficient, as matter of law, to confer standing. We agree. See *Harvard Sq. Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. at 493; *Sheehan* v. *Zoning Bd. of Appeals of Plymouth*, 65 Mass. App. Ct. at 55. As for the plaintiffs' claim of harm to the value of their properties, the judge correctly determined that their allegations were no more than "[c]onjecture, personal opinion, and hypothesis." *Butler* v. *Waltham*, 63 Mass. App. Ct. at 441.

However, we do not agree with the judge's conclusion that the plaintiffs failed to offer evidence sufficient to show that they had standing on the basis of their concerns about the effects of the variances on traffic along the Circle. In reaching that conclusion, the judge appears to have relied upon the board's condition to the variances that "all instructions and requests from the [Mashpee] Fire Department detailed in the attached memo from [Hamblin] must be adhered to and executed,"

and Lange's affidavit in which she offers her subjective opinion that variances will have no effect on the traffic flow along the Circle.

In the first instance, both the board and the judge misconstrued Hamblin's letter, which does not contain *any* "instructions [or] requests" that "must be adhered to and executed" by the defendants. Rather, Hamblin's letter merely sets out his professional opinion that at the time of the defendants' requests for variances, the Circle failed to meet the requirements of Article 174-32 of the Mashpee zoning by-law. To put our conclusion in context, we repeat the pertinent part of his letter to the board:

> "Article 174-32 of the Town by-laws states, at least in my book, that even for a single family dwelling, the access road must have an *improved* surface, with a width of 12 feet, and a cleared width of 16 feet. If the road I traveled was Pickerel Cove Circle, it does not meet the requirements of the existing by-law. . . . . In my opinion, it is questionable if one of our engines could make it down the road without receiving any damage from tree limbs." (Emphasis added.)

However, our reading of Article 174-32 of the zoning by-law shows that it requires far more than what Hamblin believed to be the case in arriving at the comments set out in his memo to the board. Article 174-32 reads in full:

> "To ensure that all buildings shall be accessible to Fire Department apparatus by way of access roadways capable of supporting firefighting apparatus with an all-weather surface roadway, there shall be an unobstructed, *paved* access roadway of not less than twenty (20) feet with a vertical clearance of not less than thirteen (13) feet six (6) inches with all corners having a minimum inside radius of not less than twenty-eight (28) feet and a minimum outside radius of not less than forty-six (46) feet. Said access roadway shall be constructed to a point not less than one hundred fifty (150) feet from the furthest point of any building on the lot. Where there is a lot with only a one-family dwelling and/or a residential accessory building, such access, where it lies within the lot, may be by a

maintained all-weather surface driveway, constructed by any combination and manipulation of soils, with or without admixtures, which produce a firm mass capable of supporting fire apparatus in all weather conditions and having an improved surface width of twelve (12) feet and a cleared width of sixteen (16) feet."

Even had Hamblin set out a requirement that the Circle itself have an improved surface twelve feet wide, with a cleared width of sixteen feet, those dimensions described by Hamblin and accepted by the board and the judge are in fact the dimensions that the by-law requires for a driveway. Also of importance is the fact that although Hamblin states that an access road must have an "improved" surface, he does not specify, as does the by-law, that the surface of the Circle must be improved so as to provide "an unobstructed, paved access roadway of not less than twenty (20) feet with a vertical clearance of not less than thirteen (13) feet six (6) inches . . . ."

In her affidavit in support of the variances, Lange, a member of Old Seabury, related that her father and other family members had created the subdivision. As a child she had vacationed "in the neighborhood" in which the defendants' lots are located and continues to do so "at a home owned by [her] mother located in the vicinity" of the two disputed lots. Based on her experience, Lange opined that vehicular traffic between the defendants' lots on the Circle off the Road leading to Route 130, the subdivision's sole means of ingress and egress, would not pass in front of the plaintiffs' properties. Rather, traffic to and from the defendants' lots would use one end of the Circle leading to the Road, whereas traffic to and from the plaintiffs' lots would use the other end of the Circle.

Neither the board's condition to the variances nor Lange's affidavit addresses the plaintiffs' concerns that the variances will result in increased traffic along the Circle, which will not accommodate two-way traffic, and will cause a deterioration of the unpaved portion of the Circle, making it difficult, if not impossible, for emergency vehicles to reach their houses.

Choate stated the obvious in his deposition testimony, that it was a matter of common sense rather than expertise to know that a house on each of the defendants' two lots would generate

more traffic than one house on the two lots if combined. Although he agreed that Lange's description of the probable traffic flow along the circle was "logical," he did not concede that all drivers would proceed in the manner opined by Lange, thereby eliminating concerns about traffic flow and deterioration of the roadway. Lange's subjective opinion addresses only the residents' use of the Circle and, unlike Choate's deposition testimony, is silent on the matter of traffic from sightseers, not to mention visitors, vendors, and occasional drivers who have lost their way.

As described by Choate, the Circle is presently less than twelve feet wide and without a clearance width of sixteen feet. Even were the Circle brought into compliance with Hamblin's memo, that is, having "an improved surface, with a width of 12 feet, and a cleared width of 16 feet," such compliance would not resolve the plaintiffs' concerns about two-way traffic and the adverse impact on the Circle from an increase in traffic. As stated by Choate in his deposition, any widening of the Circle to twelve feet would not alleviate the problem of two-way traffic.

We think it a matter of common knowledge that more than twelve feet is needed for two ordinarily sized vehicles to pass in opposite directions. Of more importance, however, is Choate's testimony concerning the needed access for the services of an emergency vehicle. According to his deposition testimony, emergency assistance was needed to rescue his dog from a fall through the ice on Mashpee Pond. Although an ambulance responded, that vehicle was unable to drive down the Circle. The rescuers had to stop at the "bottom of where [the] Circle intersects back into [the] Road" and then walk across various properties to reach and pull Choate's dog from the ice on Mashpee Pond.

Dempsey testified that he too was concerned about traffic and further deterioration of the Circle and that currently the Circle cannot accommodate two-way traffic and is in terrible condition. It is maintained by Choate and Dempsey, who add stone "[j]ust to get it passable."

Based on all the evidence presented to the judge and without any benefit given to the plaintiffs from the presumption of

standing, we conclude that the judge was in error in allowing the defendants' motion to dismiss and that he should have taken up the plaintiffs' motion for summary judgment.

We see no need, however, to remand this matter to the Superior Court for consideration of the plaintiffs' motion. Cf. *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgmt. Bd.*, 421 Mass. 196, 209 (1995); *Stop & Shop Supermarket Co.* v. *Loomer*, 65 Mass. App. Ct. 169, 172 (2005). The plaintiffs' motion was based on a pure question of law, that is, whether the grounds cited by the board in granting the variances met the criteria set out in G. L. c. 40A, § 10. Although the board recited in its decision that "there are circumstances relating to the shape and topography that affect the subject lot[s] and not the district in which [they are] located," the only circumstances set out in its decisions are that the undersized lots have been maintained as separate buildable lots on the town assessor's records and are subject to betterments from the water district. Those circumstances do not constitute lawful justification for the grant of the variances. See *Bertrand* v. *Board of Appeals of Bourne*, 58 Mass. App. Ct. 912, 912 (2003) (separate taxation of two nonconforming lots insufficient justification for variance); *McGee* v. *Board of Appeal of Boston*, 62 Mass. App. Ct. 930, 931 (2004) (fact that lot is undersized does not warrant variance). The plaintiffs' motion for summary judgment must be allowed.

7. *Conclusion.* The judgment of dismissal is reversed and the matter is remanded to the Superior Court for the entry of a judgment for the plaintiffs.

*So ordered.*