# CENTRAL STREET, LLC vs. ZONING BOARD OF APPEALS OF HUDSON & others.[1]

No. 06-P-942.

Middlesex. March 13, 2007. - June 29, 2007.

Present: GELINAS, GRASSO, & GRAHAM, JJ.

*Practice, Civil,* Summary judgment, Zoning appeal, Parties, Standing. *Zoning,* Person aggrieved.

In an action challenging a grant by a local zoning board of appeals (board) of a variance from frontage requirements, brought by a direct abutter to the locus in question, the judge erred in granting summary judgment in favor of the defendants (the board and the owner of the locus) on the ground that the abutter lacked standing to contest the action, where the qualitative evidence offered by the plaintiff was sufficient to establish an alleged injury to the plaintiff's personal interest, that is, a diminution in property value. [491-494]

CIVIL ACTION commenced in the Superior Court Department on October 12, 2004.

The case was heard by *Christopher J. Muse,* J., on a motion for summary judgment, and entry of judgment was ordered by *Nonnie S. Burnes,* J.

*Paul M. Lane* for the plaintiff.

*Richard E. Jussaume, Jr.,* for Michael O'Neil.

*Aldo A. Cipriano* for Zoning Board of Appeals of Hudson.

GRAHAM, J. Defendant Michael O'Neil, trustee of L & M Realty Trust (trust), obtained a variance from the frontage requirement of the Hudson zoning by-laws in order to create a so-called "contractor's yard" on a parcel of land on Central Street in Hudson (locus). The locus is the smaller of the two adjoining lots owned by the trust. The plaintiff, Central Street, LLC, a direct abutter to the locus, brought this action pursuant

---

[1]Town of Hudson and Michael O'Neil, as trustee of L & M Realty Trust.

to G. L. c. 40A, § 17.[2] Summary judgment was granted in favor of the defendants[3] after a judge concluded that the plaintiff lacked standing to contest the action. We reverse.

*Background.* The summary judgment record reveals the following. The plaintiff has owned the real property located at 321 Central Street in Hudson since August, 2000. Located on the property is a commercial building, approximately 46,000 square feet in size, which is leased to two light industrial tenants. Both tenants currently have lease agreements with the plaintiff that will be in effect until at least 2010.

In February, 2002, the trust purchased the property located at 327-329 Central Street, consisting of two parcels that had been held in joint ownership since 1949. One parcel, which contained two houses and a garage, had 160.87 feet of frontage on Central Street. The second parcel had 105.68 feet of frontage. The property is located in the M 1 industrial zoning district, which requires at least 150 feet of frontage and 30,000 square feet in area in order to erect any buildings or structures.

In 2003, the trust submitted an "approval not required" (ANR) plan to the planning board of Hudson, along with a "plan of land for 327 and 329 Central Street." The trust sought to divide the property into two parcels. The parcel identified as "lot 1" would contain the two houses and the garage, and the parcel identified as "lot 2" (the locus) largely would be wooded and undeveloped. The locus, however, would have only 105.68 feet of frontage on Central Street. The trust's ANR application was approved by the defendant town of Hudson on March 18, 2003.

On or about August 17, 2004, the trust filed a petition with the defendant zoning board of appeals of Hudson (board) seeking a variance in order to construct a building and other improvements on the locus. After hearing on September 9, 2004, the board unanimously approved the variance.

---

[2]General Laws c. 40A, § 17, as appearing in St. 1989, c. 649, § 2, reads in pertinent part: "Any person aggrieved by a decision of the board of appeals or any special permit granting authority . . . may appeal to . . . the superior court department in which the land concerned is situated . . . ."

[3]The trust moved for summary judgment, and defendant zoning board of appeals of Hudson filed a statement in support of that motion.

The trust intends to use the locus for its excavation business. It plans to build a thirty-foot wide driveway on the locus, which at its closest point will be approximately forty-five feet from the plaintiff's building. Heavy construction equipment, including dump trucks, would use the driveway to enter and leave a three-or-four-bay garage, which the trust intends to build on the locus along with a shed, a dumpster area, and two snow storage areas. Also, eleven parking spaces would be created on the locus for heavy construction equipment and other vehicles. The garage that would be constructed will be used to repair, maintain, and store the heavy equipment and vehicles used by the trust in its excavation business. While the trust previously stored heavy construction equipment, vehicles, and materials on its property, such trucks and materials primarily were stored on lot 1, with the locus serving as a mostly wooded buffer to the plaintiff's property.

The plaintiff subsequently filed an appeal of the board's decision pursuant to G. L. c. 40A, § 17. In its complaint, the plaintiff alleged that it was aggrieved by the board's decision because the proposed use of the locus would result in an increase in traffic and accompanying noise. The plaintiff further alleged that its abutting property would diminish in value. After discovery, the trust moved for summary judgment, arguing, inter alia, that the plaintiff lacked standing to challenge the board's decision because its claim of injury was merely speculative.

*Judge's decision.* The hearing on the defendant's motion for summary judgment focused on the plaintiff's claim that the value of its property would diminish significantly if the trust were allowed to create an unsightly contractor's yard on the locus. In support of that claim, the plaintiff presented an affidavit from its manager, Eric O'Brien. O'Brien, who at that time had worked in the business of selling and leasing commercial and industrial real estate for seventeen years, estimated that the plaintiff's property value would diminish by at least $100,000 if the trust was allowed to "expand its use" of the property.

In addition, the plaintiff hired Howard S. Dono, a licensed Massachusetts commercial real estate appraiser, to evaluate the effects the proposed construction on the locus would have on its

property. Dono's firm previously had appraised the plaintiff's property in April, 2005, for Middlesex Savings Bank, in connection with the plaintiff's mortgage refinancing. Dono had valued the property at three million dollars. At the time of the appraisal, Dono had not known that a portion of lot 1 of the trust's property was being used as a contractor's yard.[4]

In his affidavit, Dono opined that the plaintiff's property value would diminish if the trust were allowed to create the proposed contractor's yard on the locus. He based his opinion upon market data, using both a sales comparison and an income capitalization approach, which analyzes rental income over time. The data, he claimed, demonstrated that, among other things, contractor's yards sell for less than light industrial buildings; new light industrial buildings typically are not built adjacent to contractor's yards; and the underlying value of land within industrial parks dominated by contractor's yard uses is less than industrial parks with more or less homogeneous, light industrial, warehousing, and research and development uses.

The judge determined that the evidence submitted by the plaintiff in support of its claim that the proposed development of the locus would diminish the value of the plaintiff's property was based on personal opinion and mere speculation, and ruled that the plaintiff lacked standing to contest the board's action. He concluded that (1) Dono's opinion of the future market value of the plaintiff's property was based on a "flawed presumption" that the trust's property already was not being used as a contractor's yard[5]; (2) the proposed use of the locus was permitted or allowed by special permit; (3) the trust had been using its property to operate an excavation business; (4) Dono's previous appraisal did not factor in the trust's existing use of its property; (5) since 2002, large trucks had been coming to and going from the trust's property, and the trucks and other equipment had been stored outside, in plain view, on the trust's property; and (6) several of the plaintiff's tenants were bound

---

[4]Dono stated that he was not aware that a portion of lot 1 was being used as a contractor's yard. However, it appears that the trust was not fully operating a contractor's yard on lot 1, but simply was storing heavy construction vehicles and materials used in its excavation business on a portion of the parcel.

[5]See note 4, *supra.*

by leases of at least five years, consequently rendering Dono's opinion to be "hypothetical calculations anticipated for the future."

*Discussion.* This case is before us on review of a grant of summary judgment; therefore, we view the material evidence in a light most favorable to the nonmoving party. *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). The moving party may satisfy his burden of demonstrating the absence of triable issues, *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16-17 (1989), by establishing that the plaintiff will not be able to prove an essential element of its case. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

"Only 'person[s] aggrieved' within the meaning of G. L. c. 40A, § 17, have standing to seek judicial review of a decision of a zoning board of appeals." *Choate* v. *Zoning Bd. of Appeals of Mashpee*, 67 Mass. App. Ct. 376, 380 (2006), quoting from *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996). A plaintiff is considered a "person aggrieved" if it asserts "a plausible claim of a definite violation of a private right, a private property interest, or a private legal interest." *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. 491, 492-493 (1989). That interest "must be one that the applicable regulatory scheme . . . recognizes. See *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 430-431 (1949); *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. 20, 27-28 (2006)." *Choate* v. *Zoning Bd. Of Appeals of Mashpee, supra* at 381. See Levey, Massachusetts Zoning and Land Use Law § 5-26(b) (1996) (plaintiff must show that proposed project "will injure his legal or property interest *and* that the injury is to an interest the zoning law was intended to protect"). Moreover, "[t]he injury must be more than speculative . . . , but the term 'person aggrieved' should not be read narrowly." *Marashlian* v. *Zoning Bd. of Appeals of Newburyport, supra.*

A direct abutter enjoys a rebuttable presumption that it is a "person aggrieved." *Choate, supra*, citing *Marashlian, supra.* However, "[i]f standing is challenged, the jurisdictional question is decided on 'all the evidence with no benefit to the plaintiff[] from the presumption.' " *Marashlian, supra*, quoting

from *Marotta* v. *Board of Appeals of Revere*, 336 Mass. 199, 204 (1957). The question of standing is, essentially, a question of fact for the judge, and his ultimate finding on the issue will not be overturned unless shown to be "clearly erroneous." *Marashlian, supra* at 721-722; *Choate, supra* at 381-382.

However, "[a] review of standing based on 'all the evidence' does not require that the factfinder ultimately find a plaintiff's allegations meritorious." *Marashlian, supra* at 721. "[A] plaintiff is not required to prove by a preponderance of the evidence that [its] claims of particularized or special injury are true." *Butler* v. *Waltham*, 63 Mass. App. Ct. 435, 441 (2005). "Rather, the plaintiff must put forth credible evidence" that substantiates its claims. *Ibid.* Evidence is "credible" if it "provide[s] specific factual support for each of the claims of particularized injury the plaintiff has made . . . [and is] of a type on which a reasonable person could rely to conclude that the claimed injury likely will flow from the board's action." *Ibid.*

We first consider whether the alleged injury to the plaintiff's personal interest, in this case diminution of property value, is an injury to a specific interest that the applicable zoning statute, ordinance, or by-law at issue is intended to protect. The frontage requirements in zoning provisions, in addition to ensuring access to vehicular traffic and availability of utilities and municipal services, also may serve as a mechanism in controlling density of development or in preserving the character of a neighborhood. *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. 802, 810 (1981).

Here, the trust proposes to construct an 8,050 square foot garage, a thirty-foot wide paved driveway, eleven parking spaces, a shed, a dumpster area, and two snow storage areas on a wooded, undeveloped lot that lacks one-third of the required frontage, and directly abuts the plaintiff's commercial property. Diminution in real estate value in these circumstances, we conclude, is "derivative of or related to cognizable interests protected by the applicable zoning scheme." *Standerwick* v. *Zoning Bd. of Appeals of Andover, supra* at 31-32. See *Tsagronis* v. *Board of Appeals of Wareham*, 33 Mass. App. Ct. 55, 58-59 (1992), *S.C.*, 415 Mass. 329 (1993).

Turning now to the decision of the judge, we agree with the plaintiff that summary judgment should not have been entered for the defendants. The hurdle set by the judge for the plaintiff to demonstrate that its claim of injury was tangible and particularized was too high. "The 'findings of fact' a judge is required to make when standing is at issue . . . differ from the 'findings of fact' the judge must make in connection with a trial on the merits. Standing is the gateway through which one must pass en route to an inquiry on the merits. When the factual inquiry focuses on standing, therefore, a plaintiff is not required to prove by a preponderance of the evidence that [its] claims of particularized or special injury are true." *Butler* v. *Waltham, supra* at 440-441.

The judge clearly was aware of this court's decision in *Butler*, but his reliance on that decision to deny the plaintiff standing was misplaced. In *Butler,* the defendants obtained a special permit and variances from the zoning board of appeals of Waltham, which allowed them to combine and develop three parcels of land. *Id.* at 435. The plaintiffs, who lived near the proposed development, *ibid.*, contended that the proposed construction, including new traffic lights to be built 380 feet from their property, *id.* at 437, would result in "longer and more frequent traffic queues in front of [their] home and more traffic delays [on their street], *id.* at 438. This court, however, found that the evidence offered by the plaintiffs' traffic expert was not credible because it failed, on its face, to support their claim that the new traffic signals adversely would affect the plaintiffs' ability to leave their driveway during peak traffic hours. *Id.* at 442.

Here, by contrast, the qualitative evidence offered by the plaintiff was sufficient to establish standing. The fact that the plaintiff's appraiser was not aware that the trust already was using a portion of its property to store vehicles and materials at the time of the April, 2005, appraisal, and the fact that the plaintiff has long-term lease agreements with its current tenants, do not make the appraiser's opinion unreliable. Although he readily admitted this oversight in his affidavit, the appraiser concluded that the creation of a contractor's yard on the locus, *which directly abuts the plaintiff's property*, will cause the

plaintiff's property value to diminish. Thus, the appraiser's admitted oversight only affected the "baseline," i.e., the plaintiff's existing property value, not the appraiser's ultimate conclusion that the proposed development of the locus would diminish the plaintiff's property value. Thus, the judge erred in holding that the plaintiff lacked standing, and summary judgment should have not have been allowed for the defendants.

*Conclusion.* The judgment of dismissal is reversed and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*