DEWITT P. DAVENPORT, trustee,[1] *vs.* PLANNING BOARD OF
DENNIS & another.[2]

No. 09-P-321.

Barnstable. November 12, 2009. - February 1, 2010.

Present: McHUGH, BROWN, & HANLON, JJ.

*Zoning,* Special permit, By-law, Judicial review, Setback, Lot size, Frontage,
    Parking, Low and moderate income housing. *Housing. Statute,* Construction.

A Superior Court judge erred in affirming a local planning board's grant of a
    special permit to the plaintiff to build a municipally-sponsored affordable
    housing development, where, although the board reasonably interpreted the
    by-law with regard to setbacks [225-226] and maximum coverage [226], it
    exceeded its authority by inferring that its discretion, under the by-law at
    issue, to reduce minimum lot area requirements set forth in the by-law's
    intensity of use schedule included the discretion to reduce all intensity of
    use requirements, including width and frontage, as well as the require-
    ments set forth in a separate section governing multiple principal buildings
    on a lot [226-228]; and where the board erred in allowing a walkway to
    become part of the development's proposed parking spaces [228].

CIVIL ACTION commenced in the Superior Court Department on
March 31, 2006.

The case was heard by *Robert J. Kane,* J.

*E. James Veara* for the plaintiff.

*Julie Pruitt Barry* for Dennisport Partners, LLC.

BROWN, J. DeWitt P. Davenport, trustee of the Davenport
Realty Trust, appeals from a decision of a Superior Court judge
affirming the grant by the planning board of Dennis (board) of
a special permit to Dennisport Partners, LLC, to build a
municipally sponsored affordable housing development pursu-
ant to § 4.9.2.4 of the Dennis zoning by-law (by-law). At issue
is whether, where §§ 4.9.2.2 and 4.9.2.4.2 of the by-law

[1]Of the Davenport Realty Trust.
[2]Dennisport Partners, LLC.

specifically grant the board discretion to reduce the minimum lot area requirements as set forth in the by-law's intensity of use schedule (§ 2.3.2), the board correctly inferred the discretion to reduce all intensity of use requirements set forth in that schedule, including width, frontage, setback, and maximum coverage, as well as the requirements set forth in a separate section that governs multiple principal buildings on a lot (§ 2.3.4. 2a). We conclude that the board exceeded its authority.

*Background.* a. *The proposed development.* Dennisport Partners, LLC (developer), proceeding pursuant to § 4.9 of the by-law, was granted a special permit to construct a six-building, eighteen-unit affordable housing development on a 71,000 square foot lot (1.63 acres) (lot) in the residential (R-40) zoning district of Dennis. The lot is 214.63 feet wide and contains 200 feet of frontage on a "statutory private way" that leads to Great Western Road, a public way.[3] The judge found that excluding parking and roadways, the proposed lot coverage is fourteen and one-half percent. Pursuant to the intensity of use schedule contained in § 2.3.2 of the by-law,[4] multidwelling units in the R-40 district require a minimum area of 120,000 square feet,[5] frontage of 100 feet, width of 150 feet, and front, side, and rear setbacks of fifty feet. The maximum site coverage allowed is twenty-five percent.[6] Additionally, § 2.3.4.2a of the by-law provides:

> "[t]wo (2) or more principal residential structures may be erected on the same lot, provided the minimum lot area, width and frontage shall be the sum of the requirements for each principal residential structure for the district in which the lot is located and provided further that the

---

[3]There currently exists a duplex on the lot.

[4]Section 2.3.2 contains an intensity of use schedule that sets forth in separate columns the minimum lot requirements for area, frontage, and width; the minimum front, rear, and side setbacks; and the maximum site coverage and height in stories in the various zoning districts.

[5]An additional 40,000 square feet is required for each additional unit over three units.

[6]Pursuant to § 5.B(40) of the by-law, maximum total site coverage is "calculated by adding the square footage of the footprint of all structures, parking, pavement, including street access drive, but excluding walks, and dividing the total square feet thereby obtained by the total lot area in square feet."

minimum distance between said buildings shall be thirty (30) feet, all the requirements of § 2.3.2, Intensity and Use Schedule, are met, and site plan review is obtained pursuant to Section 4.1.1."

b. *The affordable housing special permit by-law.* Pursuant to the authority granted in G. L. c. 40A, § 9,[7] the town adopted § 4.9 of the by-law, entitled "Provisions to Encourage the Development of Affordable Housing in Dennis," which provides developers with an alternative to proceeding pursuant to G. L. c. 40B by relaxing certain zoning requirements to meet affordable housing goals. The town planner testified that faced with a number of developments created pursuant to G. L. c. 40B, the town adopted § 4.9 in an effort to allow the town to work cooperatively with developers while retaining some control over the aesthetics, location, and type of affordable housing developments.

Section 4.9 provides express relief from density requirements for affordable housing developments. Indeed, § 4.9.2.2.1 provides that "[t]he Planning Board shall have discretion to reduce or suspend the minimum area requirements otherwise applicable under Section 2.3.2 for an Affordable Housing Development, provided however that there must be at least 10,000 square feet for each bedroom created in an affordable housing development."[8] Other special permit requirements for affordable housing developments include a minimum tract of two and one-half acres and front, rear, and side vegetated buff-

---

[7]General Laws c. 40A, § 9, as inserted by St. 1975, c. 808, § 3, enables towns to allow by special permit "increases in the permissible density of population or intensity of a particular use in a proposed development" for applicants who by grant of the special permit provide "housing for persons of low or moderate income. . . . Such zoning ordinances or by-laws shall state the specific improvements or amenities or locations of proposed uses for which the special permits shall be granted, and the maximum increases in density of population or intensity of use which may be authorized by such special permits."

[8]Section 4.9.2.2.2 of the by-law grants the board discretion to permit a density of less than 10,000 square feet per bedroom upon a showing "that the sewage disposal system servicing the development will result in nitrogen loading of less than five (5) parts per million." Contrary to the plaintiff's argument, this showing is not required where the applicant proceeds as a municipally sponsored affordable housing project pursuant to 4.9.2.4.2, which expressly provides that density may be greater than one bedroom per 10,000 square feet of land and does not require a showing as to nitrogen loading.

ers of twenty-five feet. §§ 4.9.2.3.1 and 4.9.2.3.4. In addition, the board may reduce the number of off-street parking spaces required pursuant to § 3.1.3.2. See § 4.9.2.3.3.

It is clear from the language of the by-law and the testimony of the town planner that the town intended to provide greater zoning relief as the percentage of affordable housing in a given development increased. Thus, these requirements are further modified for a "municipally sponsored project" pursuant to § 4.9.2.4.2, such as the development at issue here, where at least "fifty percent of the units [will] be affordable to households earning between 65% and 80% of the median income and the remainder of the units shall be affordable for people earning no more than 120% of the area's median income."[9] See § 4.9.2.4.4. For municipally sponsored projects, the minimum area per unit mandated in § 2.3.2 is eliminated entirely; development of tracts of less than two and one-half acres is allowed; maximum density may exceed one bedroom per 10,000 square feet without further qualification; and front, rear, and side vegetated buffers may be less than twenty-five feet. See § 4.9.2.4.2. Apart from those specific modifications, however, the by-law provides that a permit for an affordable housing development may issue only if the development conforms "to all other requirements of the Zoning By-law." See § 4.9.2.3.6.

While conceding that it is within the board's discretion to reduce the lot area requirement, the plaintiff, the owner of abutting properties,[10] contends that the proposed development must still meet the necessary frontage, width, setback, and site coverage components of the intensity of use schedule contained in § 2.3.2 and comply with the requirements of § 2.3.4.2a (setting out the requirements that must be met before two or more principal residential structures are erected on same lot). The Superior Court judge adopted the board's interpretation of the by-law to the effect that notwithstanding § 4.9.2.2.1's specific reference only to the "area" component of the intensity of use schedule in § 2.3.2,

---

[9]The criteria by which the town determines whether it will sponsor a housing project are not at issue.

[10]The plaintiff's standing, although challenged below, is not challenged on appeal. As an abutter, the plaintiff enjoys a presumption of standing and we discern no reason to disturb the determination that he has standing.

the board has authority to grant exceptions from all of the components of the intensity of use schedule, as well as the provisions of § 2.3.4.2a. To hold otherwise, both the board and the judge reasoned, would be inconsistent with the by-law's goal of encouraging affordable housing development by providing zoning relief.

*Discussion.* "We will uphold a zoning board's decision and that of the reviewing Superior Court 'if a rational basis for the [decision] exists which is supported by the record.'" *Eastern Point, LLC* v. *Zoning Bd. of Appeals of Gloucester,* 74 Mass. App. Ct. 481, 486 (2009), quoting from *Davis* v. *Zoning Bd. of Chatham,* 52 Mass. App. Ct. 349, 356 (2001). We apply ordinary principles of statutory construction to zoning ordinances, " 'with some measure of deference . . . to the board's interpretation.' " *APT Asset Mgmt., Inc.* v. *Board of Appeals of Melrose,* 50 Mass. App. Ct. 133, 138 (2000). . . . However, a measure of rational deference still requires meaningful review." *Ibid.* Although we conclude that the board exceeded its authority with regard to some of the issues raised by the plaintiff, we comment briefly on all of the issues before us in the event they come up again.

a. *Setbacks.* The plaintiff argues that the vegetated buffers referred to in §§ 4.9.2.3.4 and 4.9.2.4.2d are in addition to the setback requirements contained in the intensity of use schedule in § 2.3.2 and that the development must comply with those setback requirements as § 4.9 does not provide express relief from them. The judge found that some of the buildings will be less than twenty-five feet from the plaintiff's property. The by-law is less than clear in this regard. The town planner testified that the buffers were intended to take the place of the setback requirements in § 2.3.2. The board and the judge adopted this interpretation. We note that another provision of the affordable housing section of the by-law, § 4.9.2.3.5, does refer to the buffers as "setbacks." In addition, § 4.9.2.3.6 of the by-law provides that where § 4.9.2 conflicts with another provision of the by-law, "the provisions of Section 4.9.2 shall control." Given the ambiguity in the by-law in this regard, we will not disturb the board's reasonable interpretation of its own by-law. Reading §§ 2.3.2, 4.9.2.3.4, and 4.9.2.3.5 together, it is not unreasonable to conclude that the perimeter of the locus is to

have twenty-five foot vegetated buffers in place of the setback requirements contained in § 2.3.2. For municipally sponsored developments, however, the vegetated buffers surrounding the perimeter may be less than twenty-five feet and, conceivably, eliminated entirely. See § 4.9.2.4.2e. We discern no error, therefore, in granting the special permit where some setbacks are less than twenty-five feet.

b. *Coverage.* There has been no showing that even as planned, the development will exceed the twenty-five percent maximum coverage set forth in § 2.3.2. Although parking and roadways were not included in the calculation, the developer testified that those areas will not consist of pavement, will not be impervious, and, therefore, were not included in the calculation. We do not find this interpretation inconsistent with § 5.B(40) of the by-law.

c. *Width, frontage, and multiple principal buildings.* Frontage of 600 feet and a width of 900 feet are required by application of §§ 2.3.2 and § 2.3.4.2a to the proposed development. There are no provisions in § 4.9 that refer to frontage or width either explicitly or implicitly. This is in stark contrast to the express provision in § 4.9.2.4.2a that "the *minimum area* per unit in Table 2.3.2 Intensity of Use shall not apply" (emphasis added). If the drafters intended to allow modifications of all of the intensity of use criteria, they clearly knew how to do so.

The developer relies on the rule of statutory construction that an individual provision of a municipal zoning by-law "must be construed in the context of the by-law as a whole and it must be given a sensible and practical meaning within that context." *Owens* v. *Board of Appeals of Belmont,* 11 Mass. App. Ct. 994, 995 (1981). The judge determined that the language of § 4.9.2.2.1, granting the board the "discretion to reduce or suspend the minimum area requirements otherwise applicable under Section 2.3.2," allows the board "to suspend other minimum area requirements" when viewed in light of the over-all purpose of the affordable housing section of the by-law.

The problem with the reasoning adopted by the board and the judge is that they were not called upon to interpret inconsistent provisions of the by-law. Under the guise of "interpreting" the by-law, they have added language that the drafters did not include. Where drafters of the by-law might easily have inserted a provi-

sion applicable to the other components of the § 2.3.2 intensity of use schedule but have rather conspicuously elected not to, we apply the rule of construction that "inclusio unius est exclusio alterius." *Livoli* v. *Zoning Bd. of Appeals of Southborough*, 42 Mass. App. Ct. 921, 923 (1997).

General Laws c. 40A, § 9, mandates that a by-law that allows increased intensity of use for affordable housing developments be "specific." Section 4.9.2.2.1 gives the board "discretion to reduce or suspend the minimum area requirements otherwise applicable under Section 2.3.2." Considering that frontage and width requirements are also set out in § 2.3.2 (under the same heading as the minimum area requirements), the reference in § 4.9.2.2.1 only to "minimum area requirements" cannot be considered mere oversight.

In addition to providing density controls, frontage requirements serve important safety functions in "ensuring access to vehicular traffic and availability of utilities and municipal services." *Central St., LLC* v. *Board of Appeals of Hudson*, 69 Mass. App. Ct. 487, 492 (2007). Such concerns are no less relevant because the development is an affordable housing project. While it may be that reduced frontage would suffice to meet these goals, we will not lightly infer from the by-law's allowance of a reduced lot size that the town intended an elimination of frontage requirements as well, particularly where the enabling statute has instructed the town to be specific with the relief provided.

Moreover, it is not clear to us that the town's failure to modify the other zoning criteria is inconsistent with the goal of increasing affordable housing. As it stands, the modifications in place allow the construction of at least one multifamily affordable housing structure on a lot that otherwise would be too small for any multifamily structure. That the by-law as written may not allow six multifamily structures on a 70,000 square foot lot may well have been intentional. Further, we note that § 4.9.2.3.5 expressly provides for reduced internal front and rear setbacks when a tract of land that is the locus of a proposed affordable housing development is subdivided. It may well be that the drafters intended developers desiring to place more than one structure on a tract to follow that route where the applicable zoning require-

ments otherwise cannot be met. Finally, to the extent that the by-law's failure expressly to reduce or exempt affordable housing developments from the width, frontage, and coverage requirements of §§ 2.3.2 and 2.3.4.2a was indeed an oversight, it is an oversight that must be corrected by the town.

d. *Parking space length.* The by-law requires perpendicular parking spaces to be twenty feet in length; the proposed development's spaces are eighteen feet. Section 3.1.6.3 grants the board discretion to "allow the use of a maximum 2-foot overhang strip as part of the space length," but further provides that "[t]his strip shall be solely designated for the purpose of vehicular parking and shall not be part of any walkway, planting area or front or side yard." Here, the overhang intrudes two feet into a five-foot wide sidewalk. The board reasoned that § 3.1.6.3 refers to that portion of the sidewalk that is functionally necessary and that because the Americans with Disabilities Act requires a width of only three feet, the overhang into the walkway is permissible and is not contrary to § 3.1.6.3.

On appeal, the developer contends that the authority granted the board in § 4.9.2.4.2e to reduce the number of parking spaces also permits the board to reduce the length of parking spaces. We note, however, that rather than reduce the length of a space, the board went a step further and allowed the use of a two-foot overhang that extends into a walkway, which is specifically prohibited in the by-law. Whatever discretion the board may have, if any, to reduce the length of a space, it does not include extending a parking space overhang into a walkway where the safety issues of pedestrians and automobiles competing for the same space appear obvious. The board erred in allowing the walkway to become part of the proposed parking spaces.

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.

*So ordered.*