WILLIAM BUTLER & another[1] *vs.* CITY OF WALTHAM
& others.[2]

No. 02-P-1512.

Suffolk. January 7, 2004. - May 5, 2005.

Present: McHUGH, COHEN, & GREEN, JJ.

*Practice, Civil,* Zoning appeal, Standing. *Zoning,* Appeal, Person aggrieved.

A Land Court judge properly concluded that plaintiffs appealing a local zon-
ing board of appeals' grant of a special permit and variances to individuals
seeking to develop a certain locus near the plaintiffs' residence lacked
standing as "person(s) aggrieved" under G. L. c. 40A, § 17, where the
plaintiffs had not produced credible evidence of a particularized injury.
[439-443]

CIVIL ACTION commenced in the Land Court Department on
November 17, 2000.

The case was heard by *Peter W. Kilborn,* J.

*L. Richard LeClair, III,* for the plaintiffs.

*Edward Rabinovitz* for John H. Smith & another.

McHUGH, J. Resolution of this appeal turns on the require-
ments that a litigant must meet in order to claim status as a
"person aggrieved" when appealing a zoning board decision
pursuant to G. L. c. 40A, § 17. The defendants John H. Smith
and Cornerstone Corporation (Cornerstone) obtained from the
zoning board of appeals of Waltham (board) a special permit
and variances they needed to combine and develop three parcels
of land (locus) in Waltham (city). The plaintiffs, William and
Louise Butler, who live near the locus, appealed to the Land
Court from the board's decision. Soon after the appeal was
filed, Smith and Cornerstone (together, the defendants) moved

[1]Louise Butler.

[2]Zoning board of appeals of Waltham; John H. Smith, individually and as
trustee of 1560 Trapelo Road Realty Trust; and Cornerstone Corporation.

for summary judgment, claiming that the plaintiffs had no standing to pursue the appeal.[3] A judge of the Land Court allowed the motion in part denied it in part and ordered the case to trial on the sole issue of whether anticipated traffic consequences of the defendants' proposed development of the locus gave the plaintiffs standing to challenge the variances. After trial, the judge found that the traffic consequences did not give the plaintiffs standing and ordered entry of judgment dismissing the complaint. We affirm.

The record reveals that the plaintiffs live at 1625 Trapelo Road. Their home is on the north side of Trapelo Road, a two lane, east-west thoroughfare intersecting with Route 128 at a cloverleaf approximately 600 feet east of the plaintiffs' property, as shown on the appended sketch. Route 128, the relevant portion of which is also known as Interstate 95, is a major artery circumscribing the Boston metropolitan area. In the city, Route 128 runs essentially north and south. The defendants own and seek to develop the locus, which is comprised of three contiguous parcels of property on the south side of Trapelo Road inside the southwest portion of the cloverleaf.[4]

One other street forms a part of the pertinent geography. Tracer Lane is located about 300 feet east of the plaintiffs' driveway, and, thus, between their property and the cloverleaf. Tracer Lane, also on the north side of Trapelo Road, provides access to a major office complex bordering Route 128.

To develop the locus, the defendants had to obtain approvals from several different boards. Insofar as is material here, they received the first of the approvals they needed on December 13, 1999, when the city council granted their petition for several permits. However, the city council's approval was subject to a number of conditions, including a requirement that the defendants obtain an additional special permit and dimensional

---

[3]According to the Land Court docket the city and the board filed a memorandum in support of Smith's and Cornerstone's motion for summary judgment. Although named in the notice of appeal, the city and the board did not file an appellate brief.

[4]Two parcels consist of residential property and the third is a commercial property currently containing an office building. The defendants plan to raze the existing structures, combine the three parcels, and construct a three-story office building with an accessory parking lot.

variances from the board and that they install two traffic lights to improve existing traffic flow on Trapelo Road.[5]

The two traffic signals and their anticipated effect on the plaintiffs are at the heart of the proceedings that followed, so a brief description of them is appropriate. The first of the two signals, commonly referred to as the "west signal," is to be located approximately 380 feet east of the plaintiffs' driveway at the intersection of Trapelo Road and the southbound Route 128 on ramp. That signal is designed to allow westbound Trapelo Road traffic to enter Route 128 by turning left, across Trapelo Road. The second signal, referred to as the "east signal," is to be located on Trapelo Road at the intersection of Trapelo Road and the southbound Route 128 off-ramp. The east signal is designed to allow exiting traffic to turn left and travel east on Trapelo Road after leaving the off-ramp.

On August 24, 2000, the defendants applied to the board for the special permit and variances they needed to comply with the conditions the city council had imposed. In their application for a special permit, the defendants sought permission to increase the size of a nonconforming building on the locus. In the application for variances, they sought relief from the area, frontage, front yard, side yard, and rear yard requirements of the zoning ordinance, as those requirements had been altered by a variance the prior owners of the commercial parcel received in 1960. On October 30, 2000, the board granted the defendants' application.

Pursuant to G. L. c. 40A, § 17, the plaintiffs appealed the board's decision to the Land Court, claiming that the board had exceeded its discretionary authority, that the decision was otherwise not in accordance with applicable law, and that it was arbitrary and capricious. The defendants responded by asserting that the plaintiffs had no standing to pursue the appeal because they were not "aggrieved" by the board's decision and, as a

[5]Two intersections, one between Trapelo Road and the Route 128 off-ramps and one between Smith Street and Trapelo Road, are frequently gridlocked during peak morning and evening rush hours. The intersection between Tracer Lane and Trapelo Road is often gridlocked during the peak morning hours but flows more smoothly during peak evening hours, when a police officer directs traffic.

consequence, were not within the class of persons to whom appeals under § 17 were available.[6]

The defendants soon filed a motion for summary judgment on the standing issue. In response, the plaintiffs claimed that they were "aggrieved" because, among other things, installation of the required traffic signals would result in longer traffic queues in front of their home.[7] In support of their position, the plaintiffs relied principally on two affidavits, one submitted by Louise Butler and the other by one Paul J. Hajec, a traffic expert whom the plaintiffs had engaged.

In her affidavit, Mrs. Butler essentially stated that existing traffic conditions on Trapelo Road were oppressive and interfered with her quality of life.[8] Hajec opined in his affidavit that installation of the traffic lights would result in longer and more frequent traffic queues in front of the plaintiffs' home and more traffic delays along Trapelo Road.[9]

After considering the affidavits, a judge of the Land Court allowed the defendants' motion for summary judgment in part, denied it in part, and ordered that the action proceed to trial on the question whether and to what extent the traffic signals, and

---

[6]General Laws c. 40A, § 17, as appearing in St. 1989, c. 649, § 2, reads in relevant part: "Any person aggrieved by a decision of the board of appeals . . . may appeal to the land court department . . . by bringing an action within twenty days after the decision has been filed in the office of the city or town clerk. . . . The complaint shall allege that the decision exceeds the authority of the board . . . and any facts pertinent to the issue, and shall contain a prayer that the decision be annulled."

[7]They also claimed that the traffic lights would decrease the value of their home, and increase the traffic, noise, and pollution along Trapelo Road and that they had a legitimate interest in protecting the integrity of their residential zoning district.

[8]She stated that during peak morning and evening hours, traffic going eastbound on Trapelo Road was queued back from the Tracer Lane intersection to her driveway fifty percent of the time. Because she sought to travel east ninety-five percent of the time, the queues typically resulted in three to five minute waiting times before she could leave her driveway during peak hours. In addition, Mrs. Butler said that backups on Trapelo Road meant that she often spent between five and fifteen minutes traveling the four-tenths of a mile along Trapelo Road from Smith Street to her driveway during peak hours.

[9]More specifically, Hajec concluded that ninety-five percent of the time the queue lengths starting at the west signal would be 275 feet or shorter during peak morning hours, and 300 feet or shorter during peak evening hours.

anticipated additional traffic produced by the development of the locus, would affect the length or duration of the traffic queues in front of the plaintiffs' house.[10]

Trial then ensued. The plaintiffs presented evidence to support their contention that the development of the locus would increase the eastbound queues in front of their house,[11] and the defendants presented evidence to the contrary. In his findings of fact and conclusions of law, the judge created what he viewed as the relevant legal framework by ruling that the "burden of persuasion" was on the plaintiffs. Earlier, in a colloquy with plaintiffs' counsel during the course of summation, the judge had amplified this somewhat by saying

> "[I]f I feel that you have not established by [a] preponderance [of the evidence] that there will be an impact [on the plaintiffs flowing from the traffic lights], the fact that you have some good [and credible] evidence is not enough. You have gone to trial. I make a finding of fact."

Substantively, the judge found that the plaintiffs had "not shown that traffic congestion in front of their house will be worsened if the [defendants'] project is built." That being the case, the judge ruled that they had no standing and ordered entry of a judgment dismissing their complaint.

On appeal to this court, the plaintiffs argue that the judge failed to apply the correct standard of proof at trial and wrongly

---

[10]The judge ruled that the plaintiffs' other claims, see note 8, *supra*, were insufficient, either as a matter of undisputed fact or as a matter of law, to confer standing on them. Although the plaintiffs also have appealed from that portion of the judge's decision, we discern no error. Nothing in the affidavits the plaintiffs submitted undercuts the judge's conclusion that their claims of decreased property value and increased noise and light pollution were purely speculative. The judge also ruled that a claimed interest in protecting the integrity of the zoning district was an insufficient foundation on which to base a claim of standing. That ruling was correct. See, e.g., *Denneny* v. *Zoning Bd. of Appeals of Seekonk*, 59 Mass. App. Ct. 208, 215-216 (2003).

[11]Specifically, plaintiffs sought to show at trial that the west signal would stop eastbound Trapelo Road traffic, which presently had the right-of-way, and thereby slow the movement of eastbound traffic along Trapelo Road. Second, they sought to show that both signals would allow more cars to exit Route 128 onto Trapelo Road, necessarily increasing eastbound Trapelo Road traffic. Finally, they sought to show that overall traffic would increase because of additional vehicles going in and out of the newly-developed locus.

ruled against them, because the evidence conclusively demonstrated that the development of the locus would increase the frequency, length, and duration of the queues in front of the their home. We disagree.

We begin our discussion of the law with a brief review of settled principles. "Only a 'person aggrieved' may challenge a decision of a zoning board of appeals." *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996). See *Nickerson* v. *Zoning Bd. of Appeals of Raynham*, 53 Mass. App. Ct. 680, 681 n.2 (2002) ("status as an 'aggrieved person' is an essential prerequisite to judicial review under G. L. c. 40A, § 17").[12] A plaintiff qualifies as an "person aggrieved" upon a showing that his or her legal rights will be infringed by the board's action. *Marashlian* v. *Zoning Bd. of Appeals of Newburyport, supra.* To show an infringement of legal rights, the plaintiff must show that the injury flowing from the board's action is special and different from the injury the action will cause the community at large. *Bell* v. *Zoning Bd. of Appeals of Gloucester*, 429 Mass. 551, 554 (1999); *Barvenik* v. *Board of Aldermen of Newton*, 33 Mass. App. Ct. 129, 132 (1992); *Nickerson* v. *Zoning Bd. of Appeals of Raynham, supra* at 682.

Frequently, the question whether a plaintiff has made the requisite showing is a question of fact and, for that reason, a judge's finding that a person is or is not aggrieved will not be set aside unless the finding is clearly erroneous. See *Murray* v. *Board of Appeals of Barnstable*, 22 Mass. App. Ct. 473, 476 (1986), citing Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974); *Nickerson* v. *Zoning Bd. of Appeals of Raynham, supra*, quoting from *Marashlian* v. *Zoning Bd. of Appeal of Newburyport, supra* at 721-722 ("standing is 'essentially a question of fact for the trial judge,' which will be reversed only if 'clearly erroneous' "). The "findings of fact" a judge is required to make when standing is at issue, however, differ from the "findings of fact" the judge must make in connection with a trial on

---

[12] "Parties in interest" as defined by G. L. c. 40A, § 11, enjoy a rebuttable presumption of standing. See *Marashlian* v. *Zoning Bd. of Appeals of Newburyport, supra* at 721; *Marinelli* v. *Board of Appeals of Stoughton*, 440 Mass. 255, 257 (2003). The plaintiffs here are not statutory "parties in interest" and no presumption arose.

the merits. Standing is the gateway through which one must pass en route to an inquiry on the merits. When the factual inquiry focuses on standing, therefore, a plaintiff is not required to prove by a preponderance of the evidence that his or her claims of particularized or special injury are true. "Rather, the plaintiff must put forth credible evidence to substantiate his allegations. [It is i]n this context [that] standing [is] essentially a question of fact for the trial judge." *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. at 721. See *Denneny* v. *Zoning Bd. of Appeals of Seekonk*, 59 Mass. App. Ct. 208, 211-212 (2003).[13]

Although decided zoning cases have not discussed the ingredients of "credible evidence," cases discussing the same concept in other contexts have observed that "credible evidence" has both a quantitative and a qualitative component. See *Commonwealth* v. *Reese*, 438 Mass. 519, 524-523 (2003); *Commonwealth* v. *Blanchette*, 54 Mass. App. Ct. 165, 175 (2002), *S.C.*, 60 Mass. App. Ct. 924 (2004). We think the same approach is appropriate here. Quantitatively, the evidence must provide specific factual support for each of the claims of particularized injury the plaintiff has made. See *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. at 724. Qualitatively, the evidence must be of a type on which a reasonable person could rely to conclude that the claimed injury likely will flow from the board's action. Conjecture, personal opinion, and hypothesis are therefore insufficient. See *Monks* v. *Zoning Bd. of Appeals of Plymouth*, 37 Mass. App. Ct. 685, 688 (1994). When the judge determines that the evidence is both quantita-

---

[13]Some cases speak of the requirement that the plaintiff establish a "plausible claim" of particularized injury rather than produce "credible evidence" of that injury. See, e.g., *Riley* v. *Janco Cent., Inc.*, 38 Mass. App. Ct. 984, 985 (1995). See also *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. 491, 493 (1989) (to establish standing plaintiff must make "a plausible claim of a definite violation of a private right, a private property interest, or a private legal interest"); *Jaffe* v. *Zoning Bd. of Appeals of Newton*, 34 Mass. App. Ct. 929, 930 (1993). The two phrases are simply different ways of expressing the same concept. A plaintiff makes a "plausible claim" of particularized injury by producing "credible evidence" of that injury. See *Bell* v. *Zoning Bd. of Appeals of Gloucester*, 429 Mass. 551, 553-554 (1999). Cf. *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. at 723 n.5.

tively and qualitatively sufficient, however, the plaintiff has established standing and the inquiry stops. As noted above, the plaintiffs are not required to persuade the judge that their claims of particularized injury are, more likely than not, true.

Given those principles, it appears that the judge may have imposed on the plaintiffs a burden more onerous than the law permits. We think, though, that any such error was harmless, because our own review of the record persuades us that a finding that the plaintiffs had produced "credible evidence" of a particularized injury would have been clearly erroneous and would have required reversal.

As noted earlier, the trial focused on the traffic queues that the new traffic signals on Trapelo Road were likely to generate and the impact of those traffic queues on the plaintiffs. The primary evidence on that subject was the testimony of Hajec, the plaintiffs' traffic expert. Hajec testified that the queues of eastbound Trapelo Road traffic would extend 275 feet or less west of the west traffic signal ninety-five per cent of the time in the peak morning hours, and 300 feet or less ninety-five per cent of the time during the peak evening hours. The evidence also showed, however, that the distance between the west signal and the plaintiffs' driveway was 380 feet. Even if Hajec's testimony were qualitatively sufficient,[14] that testimony did not support the plaintiffs' claim that the queues would adversely affect their ability to leave their driveway during peak hours.[15] Indeed, as the judge observed, Hajec's testimony suggested that the traffic queues would stretch back from the intersection to the plaintiffs' driveway less often than they do now.

---

[14]Hajec was unaware of the distance between the west signal and the plaintiffs' driveway. He had visited the plaintiffs' property six times to observe the traffic conditions and observed on three of those occasions that the queue line reached their house. Beyond these observations, he had performed no study or calculation to determine the queue lengths or the duration of the queues produced by current conditions.

[15]At trial, the plaintiffs attempted to undermine the negative components of Hajec's conclusions by citing a study regarding the impact of the signals on queues from Tracer Lane back to their home. The study predicted that the queues would be up to 296 feet five percent of the time in the peak p.m. hours and up to 202 feet fifty percent of the time. The judge did not credit that study, but even if he had, it would have been of little assistance to the plaintiffs because the distance between Tracer Lane and their driveway is 300 feet.

The plaintiffs' effort to superimpose "common sense" on Hajec's testimony is likewise unavailing. Essentially, they argue that because Trapelo Road is congested at peak hours now, and completion of the development of the locus will create additional traffic on the road, the addition of more traffic to an already congested road must inevitably increase the existing congestion. The testimony at trial was divided on the question of whether increased traffic would actually result from the development but, for the sake of argument, we assume that some increased traffic will result. Even with that assumption, however, a resort to "common sense" does not help the plaintiffs, for common sense equally supports a conclusion that the installation of traffic signals will impose order on the current chaos and lead to less congestion even with more traffic. That conclusion, in turn, is essentially consistent with Hajec's testimony that traffic queues will likely be shorter than the evidence shows they are now.

*Judgment affirmed.*