Muse, Christopher J., J.
BACKGROUND
The plaintiffs, DeWitt Davenport (Davenport) and Stephen Aschettino (Aschettino) as trustees of the South Yarmouth Nominee Trust and the Green Harbor Limited Partnership, are appealing the Town of Yarmouth Board of Appeals (the Board) decision that the use of the single-family homes located at 8 and 24 Harbor Road do not qualify as permissible single-family residential use, but are an extension and expansion of the Green Harbor Resort located on Baxter Avenue in Yarmouth, Massachusetts. On July 11, 2007, this court conducted a non-jury trial and for the reasons that follow, the Board’s decision is AFFIRMED.
FACTS
The court finds the following relevant facts based on the stipulation of the parties, and by a preponderance of the credible evidence, and reasonable inferences therefrom.
Davenport and Aschettino are the current trustees of the South Yarmouth Nomine Trust and are the record owners of the property located at 24 Harbor Road, Yarmouth, Massachusetts. Green Harbor Limited Partnership is a lawfully existing Massachusetts Limited Partnership and is the record owner of the property located at 8 Harbor Road, Yarmouth, Massachusetts. Each of the Harbor Road properties contains only one dwelling unit and are used by only one family at a time. The Harbor Road properties are not located on or contiguous to any property on which any part of The Green Harbor Village Resort (the Resort) is located. The Harbor Road properties are rented only on a weekly basis during the summer season and occasionally on a weekend basis in the spring and fall. Individual rooms or suites of rooms are not rented to persons other than the occupant family.
The Resort, located on Baxter Avenue in Yarmouth, Massachusetts, is a valid preexisting, nonconforming motel located in a residential zoning district of Yarmouth. It is located approximately one-half mile north of 8 and 24 Harbor Road. The Harbor Road properties and the Resort property share no common utilities. The Harbor Road properties are separately assessed and taxed by the town of Yarmouth. The Resort and Harbor Road properties are both located in a residential zoning district of Yarmouth. Motel use is not a permitted use in any residential zoning district in Yarmouth without approval from the town.
Renters of the Harbor Road properties commence occupancy by registering and receiving keys at the front desk of the Resort. Check-out of the Harbor Road properties is also accomplished through the front desk of the Green Harbor Resort. In addition, renters of the Harbor Road properties receive information, guest services, maid service, linens and toiletries from staff of the Resort. Renters of the Harbor Road properties have full use of all Resort amenities. The use charge the Harbor Road properties is computed on the basis of a daily rate and the properties are offered for stays as short as a weekend. The Harbor Road properties each have signs designating them as a “Harbor House” and the properties are referred to as the “Harbor House Units” in Green Harbor Resorts marketing literature. The Green Harbor Resort holds out to the public that 8 and 24 Harbor Road are identified as units 80 and 81 of the Resort. The Harbor Road properties are *396 rented coterminously with the seasonal operation of the Resort.
It is not unusual for homeowners to rent their homes on a weekly or less than weekly basis often listed with local realtors. Area realtors advertise many properties throughout the Town of Yarmouth, respond to requests for rentals, make all the arrangements for the rentals, collect the rent, pay certain expenses from that rental income and pay the net income to the property owner. In some instances the realtors act as property managers including arranging for maintenance and repairs, arranging for linen service and arranging for cleaning. Many homes throughout the Town of Yarmouth are owned and only used as rentals and are never occupied by the owners.
By correspondence dated February 25, 2005, John J. Twomey, a town resident, requested information from the Town of Yarmouth Building Inspector concerning the arguable nonconforming use of the Harbor Rd. houses. At all times material, John Brandolini was the duly appointed Building Inspector for the Town of Yarmouth. The Building Inspector replied by correspondence dated March 18, 2005, that it was his opinion that the Harbor Road properties “are not ‘Boarding or Lodging Houses’; ‘Guesthouses, Inns or Bed and Breakfast Inns’; or structures accessory to a resort — a resort use as defined in the Yarmouth Zoning Bylaw.” On April 15, 2005, the defendants filed an “Application for Hearing” with the Board. The defendants are either direct abutters or abutters to direct abutters within 300 feet of either number 8 or number 24 Harbor Road and are entitled to notice as parties in interest from the defendant board pursuant to G.L. Chapter 40A, §11. The plaintiffs opposed the Application. The issue of standing was notraised at the Zoning Board of Appeals hearing. The Board heard the matter on June 23, 2005 and issued a Decision filed with the Yarmouth Town Clerk on June 27, 2005. The Board found that the use of the Harbor Road properties does not qualify as permissible single-family residential use, but constitutes an extension of the Resort. The plaintiffs timely appealed the Board’s decision by Complaint filed in this Court on July 8, 2005.
Defendant Jane Davidson, a 34-year resident of 35 Harbor Rd., Yarmouth, testified credibly about the changes she observed in her area following the commencement of the rental activity of 8 and 24 Harbor Rd. by the plaintiffs. The residential character of the area has discernibly changed by the influx of Green Harbor guests. There is more pedestrian and motor vehicle traffic. Service vehicles used for daily clean-up and laundry changes are noticed. Parking of multiple automobiles in the 8 and 24 Harbor Rd. driveways is pronounced. Acknowledging that she and her neighbors had the right to a steady flow of multiple family and friends as guests, and that cleaning and linen services could be obtained on a daily basis, she firmly rejected both ideas as impractical,[3] and costly. The court credits her testimony, and finds that the activities that change the neighborhood are also consistent with the expected consequences of housing the transient guests registered at the Resort.
DISCUSSION
Subject to the federal and state constitutions, and to G.L.c. 40A, §1 et seq. (“the Zoning Act”), cities and towns have authority to regulate the use of land and buildings. See Sturges v. Town of Chilmark, 380 Mass. 246, 253 (1980) (citing legislative intent to permit wide array of zoning provisions). The authority to regulate land use stems from the state’s power to protect the public health, safety and welfare, “as those terms are broadly construed.” Caires v. Bldg. Comm’r of Hingham, 323 Mass. 589, 593 (1949). G.L.c. 40A provides that any person aggrieved by a decision of the board of appeals may appeal to this court and “the court shall hear all evidence pertinent to the authority of the board or special permit granting authority and determine the facts, and upon such facts as so determined, annul such decision if found to exceed the authority of such board . . .” G.L.c. 40A, §17.
Standing
“Under Section 7, a person in writing may request a building inspector to enforce the zoning by-law and is entitled to written response. The person need not be aggrieved. To go beyond that stage, if the request for enforcement is rejected, a party must be aggrieved.” Green v. Board of Appeals of Provincetown, 404 Mass. 571, 573 (1989). Here, John J. Twomey, who would not otherwise have had standing to bring an Chapter 40A action, requested in writing that the Building Inspector determine whether the owners of the Harbor Road properties were conforming to the zoning bylaws. Upon the Board’s determination that the use of the Harbor Road properties was non-conforming, the plaintiffs filed suit requesting that this court reverse the Board’s decision. The court finds the matter is properly before the court, as it is uncontested that plaintiffs had the right of appeal of the Board’s decision.
Plaintiffs, however, present an interesting jurisdictional argument that must unravel upon close inspection. Plaintiffs claim that the non-municipal defendants did not have standing to challenge the building inspector’s initial opinion that the residences in question were not "Boarding or Lodging Houses. ” The court finds that the non-municipal defendants had the presumptive standing recognized by 40A. Moreover, inasmuch as plaintiffs failed to challenge their standing at the hearing before the Board, this defense was waived. Hogan v. Hayes, 19 Mass.App.Ct. 399, 402-03 (1985). Cited and discussed at Warrington v. Town of Rutland, 2006 WL 104752 (Mass.Super. 2006) (Wexler J.) [21 Mass. L. Rptr. 37 (Wexler, James H., J.), reconsidered and reaffirmed, 21 Mass. L. Rptr. 453 (Wexler, James H. J.)].
*397 Notwithstanding the independent standing of the defendant Board, and the plaintiffs’ waiver, this court finds that the non-municipal defendants have standing as aggrieved parties. A party qualifies as a “person aggrieved” if that party’s legal rights will be infringed upon by the zoning board’s decision. Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 721 (1996). Although the term “person aggrieved” should not be read narrowly, the alleged “injuiy must be more than speculative.” Id. An abutter enjoys a rebuttable presumption that they qualify as a “person aggrieved.” Id. Following a challenge to the plaintiffs standing, the determination whether a plaintiff has the requisite standing as a “person aggrieved” is based on all the evidence, with no benefit inuring to the plaintiff from the presumption. Barvenik v. Bd. of Appeals of Alderman of Newton, 33 Mass.App.Ct. 129, 131-32 (1992). In Barvenik, the court explained,
To qualify for that limited class, [the non-municipal defendants] must establish — by direct facts and not speculative personal opinion — that his injury is special and different from the concerns of the rest of the community . . . Subjective and unspecific fears about the possible impairment of aesthetics or neighborhood appearance, incompatible architectural styles, the diminishment of close neighborhood feeling, or the loss of open or natural space are all considered insufficient bases for aggreivement under Massachusetts law.
Id. at 132-33. In this context, the question of standing becomes a question of fact for the trial judge. Marashlian, 421 Mass. at 721.
Credible evidence, supporting a party’s claim, “has both a qualitative and a quantitative component.” Butler v. City of Waltham, 63 Mass.App.Ct. 435, 441 (2005). Quantitatively, the evidence must be factually specific and particularized to the alleged injuries. Id. “Qualitatively, the evidence must be of a type of which a reasonable person could rely to conclude that the claimed injuiy likely will flow from the board’s action.” Id. Accordingly, “[cjonjecture, personal opinion, and hypothesis are therefore insufficient.” Id.
In consideration of this issue, the court finds that the defendants maintained their standing through trial. This is based on the findings of the court drawn from the testimony of Jane Davidson, leading to the conclusion that she and her similarly situated neighbor/abutters have suffered the kind of specific injuiy and infringement of their legal rights, contemplated in Barvenik. This harm is precisely the kind that occurs when transient commercial housing is injected into residentially zoned neighborhoods.
Review of Zoning Board of Appeals Decision Under G.L.c. 40A, §17
On a G.L.c. 40A, §17 appeal, review of the board’s decision, while based upon de novo fact finding, is nonetheless “circumscribed . . . [That decision] ‘cannot be disturbed unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitraiy.’ ” Davis v. Zoning Bd. of Chatham, 52 Mass.App.Ct. 349, 355 (2001), quoting Roberts v. Southwestern Bell Mobile Sys., Inc., 429 Mass. 478, 486 (1999). “A decision is not arbitraiy and capricious unless there is no ground which ‘reasonable [persons] might deem proper’ to support it." T.D.J. Dev. Corp. v. Conservation Comm’n. of North Andover, 36 Mass.App.Ct. 124, 128 (1994), quoting Cotter v. Chelsea, 329 Mass. 314, 318 (1952). The circumscribed standard of review in zoning cases also reflects “the basic rules of appellate review [of administrative action] mandating that, [if the agency has, in the discretionary exercise of its expertise, made a choice between two fairly conflicting views, and its selection reflects reasonable evidence, [a] court may not displace the agency’s choice . . . [I]f the question is fairly debatable ... [a reviewing court] cannot substitute [its] judgment for that of the [agency].” Davis, 52 Mass.App.Ct. at 356, n.11, quoting Falmouth v. Pacheco, 49 Mass.App.Ct. 737, 740 n.3 (2000).
It is obvious and inescapable[4] that the plaintiffs’ business activity on the subject properties is indistinguishable from that conducted at the Resort. The guests at Harbor Road have all the amenities of the main facility except internet access and a central phone system. The properties are described in eveiy marketing brochure as part of the resort complex, and are designated as Resort units 80 and 81. The rental season for the residences coincide with the Resort. They are operated and managed by the Resort as if they were in the perimeter of the motel property. Unlike the Yarmouth homes sometimes rented through an independent realtor, these houses are “rented” exclusively by the plaintiffs. Room taxes are collected in similar fashion. The use of these two properties do not qualify as single-family residential use. Instead their use is an impermissible extension of the Green Harbor “motel” use.
The Board did not exceed its statutoiy authority, and was not arbitraiy and capricious in its decision, which is AFFIRMED.
ORDER
For the foregoing reasons, the Board’s decision of June 27,2005, finding that the use of the Harbor Road properties does not qualify as permissible single-family residential use, but constitutes an extension of the Resort, is AFFIRMED.

Her questioning why anyone would have guests for more than a few days recalls Ben Franklin’s quote, reported in Poor *398 Richard’s Almanack, 1736, that “Fish and visitors smell in three days."

The transparency is as obvious as the intrinsic qualities ofa rose by any name (William Shakespeare, Romeo and Juliet II, ii, 1-2, and Gertrude Stein, Sacred Emily 1913) and the gait, sounds and navigational skills of a duck (observation credited to James Whitcomb Riley c. 1883) but see discussion by Locke, J., in White City Shopping Center v. PR Restaurants, LLC, LW # 12-385-06 (2006) [21 Mass. L. Rptr. 565], distinguishing between a burrito and a sandwich.