MARGARET MICHAELS & others[1] *vs.* ZONING BOARD OF
APPEALS OF WAKEFIELD & another.[2]

No. 07-P-199.

Suffolk. November 15, 2007. - March 27, 2008.

Present: LENK, BROWN, & McHUGH, JJ.

*Cemetery. Zoning,* Nonconforming use or structure, Person aggrieved. *Practice,
Civil,* Standing.

A Land Court judge properly dismissed, for lack of standing, a civil action
brought by abutters to a cemetery seeking review of a decision of the zon-
ing board of appeals that a crematorium on the grounds of the cemetery
would not be substantially more detrimental to the neighborhood than the
existing, nonconforming cemetery use, where the abutters failed to produce
quantitatively sufficient evidence as to their claims of special and different
injury regarding increased traffic, the size of a proposed bell tower, a
change in the residential character of the neighborhood, and a stigma that
would attach to their properties, and where the abutters failed to produce
qualitatively sufficient evidence as to their claims of special and different
injury regarding emissions and diminution in property values. [450-453]

CIVIL ACTION commenced in the Land Court Department on
July 3, 2002.

The case was heard by *Gordon H. Piper,* J.

*Philip B. Posner* for the plaintiffs.

*Joseph B. Harrington* for Lakeside Cemetery Corporation.

McHUGH, J. Lakeside Cemetery Corporation (Lakeside) owns
a cemetery in Wakefield, where it seeks to build a crematorium
in the basement of a building that now houses a chapel. To ac-
complish that goal, Lakeside sought a "finding" from the zon-
ing board of appeals of Wakefield (board) that the crematorium
would not be substantially more detrimental to the neighbor-

---

[1]Ian MacRobbie and Mary MacRobbie.

[2]Lakeside Cemetery Corporation.

hood than the existing, nonconforming cemetery use.[3] The finding was opposed by cemetery abutters Margaret Michaels and Ian and Mary MacRobbie[4] (plaintiffs).[5] Their opposition notwithstanding, the board made the finding Lakeside desired. The plaintiffs sought review in the Land Court where, after trial, a judge ordered the complaint dismissed for lack of standing, while noting a number of issues he would have to address were he to reach the merits of their claim. The plaintiffs appeal and we affirm.

Absent clear error of a type this record does not reflect, we accept the judge's findings of fact. *Butler* v. *Waltham*, 63 Mass. App. Ct. 435, 440 (2005). Those findings reveal that the cemetery chapel was erected in 1932. The chapel and cemetery land became subject to zoning regulations in 1966, when the Wakefield town meeting placed the land within the general residence district. From that point onward, as all parties agree, continued operation of the chapel became a lawful nonconforming use.

Although the MacRobbies' view of the chapel is obscured by trees and Michaels has "no view whatsoever of the chapel building," everyone agrees that they were "parties in interest" at the board proceedings. See G. L. c. 40A, § 11. As parties in interest, the plaintiffs benefited from an initial presumption of standing to challenge the board's action. See *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. 20, 32-33 (2006). However, when, as here, "the presumption is rebutted, the burden rest[ed] with the plaintiff[s] to prove standing, which requires that the plaintiff[s] 'establish — by direct facts and not by speculative personal opinion — that [their] injury is special and different from the concerns of the rest of the community.' " *Id.*

---

[3]Lakeside sought the finding pursuant to G. L. c. 40A, § 6, inserted by St. 1975, c. 808, § 3, which, in material part, provides, "Pre-existing nonconforming structures or uses may be extended or altered, provided, that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance or by-law that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood."

[4]Actually, the MacRobbies are abutters of the cemetery and the plaintiff Michaels is an abutter of an abutter.

[5]Julie and Robert Barrows also were plaintiffs in this case; their claims were voluntarily dismissed in 2003.

at 33, quoting from *Barvenik* v. *Aldermen of Newton*, 33 Mass. App. Ct. 129, 132 (1992). To establish that special and different injury, and thus their standing, the plaintiffs must present evidence that is both quantitatively and qualitatively sufficient. "Quantitatively, the evidence must provide specific factual support for each of the claims of particularized injury the plaintiff[s] . . . made. . . . Qualitatively, the evidence must be of a type on which a reasonable person could rely to conclude that the claimed injury likely will flow from the board's action." *Butler* v. *Waltham*, 63 Mass. App. Ct. at 441.

To support their claim of standing, the plaintiffs proffered six injuries they said would flow from allowance of the crematorium: (1) increased traffic; (2) visible air emissions or heat "shimmer;" (3) the size of the proposed bell tower; (4) diminution of property values; (5) change in the residential character of the neighborhood; and (6) a "stigma" they say will attach to their properties. The judge's findings show that none of those claims was supported by the requisite quality or quantity of evidence.

With respect to four of the six claimed injuries, the judge implicitly found that the plaintiffs' proffered evidence was quantitatively insufficient. On the matter of traffic, the judge found that, although construction of the crematorium "may [create] some very slight incremental increase in the number of vehicles bringing remains to, and picking them up from, the cremation facility," there was over-all "a failure of proof . . . that there will be any problems of traffic volume increase that could possibly affect the plaintiffs or their properties adversely." Nor, the judge found, would the crematorium alter the character of the traffic, for typically the remains would be brought to the facility in hearses that already made frequent trips to and from the cemetery. The plaintiffs failed to provide any evidence to support their claim that the bell tower, which was to enclose and conceal crematorium stack emissions, would have an adverse visual impact on them. The assertions of stigma and change in neighborhood character, the judge found, amounted to little more than the kind of undifferentiated fear and apprehension that is insufficient to confer standing. See *Barvenik* v. *Aldermen of Newton*, 33 Mass. App. Ct. at 131-133; *Britton* v. *Zoning Bd. of Appeals of Gloucester*, 59 Mass. App. Ct. 68, 75 (2003). The record amply supports these findings.

Elimination of those four asserted bases for standing on quantitative grounds left two, emissions and diminution of property values, for further consideration. On both issues, the plaintiffs presented expert testimony, the content of which satisfied the quantitative component of the evidence they were required to produce. With respect to quality, however, the judge had this to say about the expert emissions testimony:

> "The plaintiffs put on one witness, Kathleen Fahey, who had previously worked at Mt. Auburn Cemetery in Cambridge, which has a crematorium. Her work there did not give her any specific knowledge about that crematorium; she had nothing to do with its interior or its operation, and instead merely saw it at times, from the outside and from some distance. Fahey's testimony was anecdotal in nature, and cannot be extrapolated to prove much at all about the proposed facility at Lakeside Cemetery, because the crematory equipment at Mt. Auburn was installed in the 1960s, and Ms. Fahey was unsure as to its components, operation, maintenance or repair."

The judge said this about the valuation testimony:

> "I find the testimony and report by Ms. Brooks entirely unpersuasive. She largely evaluated the issue of diminution in value in a vague, unconvincing, and hypothetical manner. Her evidence rested on shaky research, methodology unaccepted by the appraisal profession, and unfounded assumptions. Her opinion relied on, among other things, the factual premise that there will be hearses, regularly carrying remains to the cremation facility, which will be obvious to those in the surrounding neighborhood, and that the crematorium will emit smoke and vapors obvious to all. These critical assumptions I find factually unsupported by the evidence."

Although the judge did not say so explicitly, his evaluations amounted to a determination that no reasonable person would rely on the testimony to form a conclusion either that problematic emissions or diminution of property values would flow from installation of the crematorium. Put more succinctly, the judge's evaluations were an implicit determination that the experts' testimony was qualitatively insufficient to establish the plaintiffs' standing.

To be sure, the judge appeared to steer into shoal waters when he contrasted the testimony of the plaintiffs' experts with the testimony of the experts the defendants had called.[6] When making a judgment on the merits, assessment of the comparative weight of expert testimony is appropriate in determining whether the party with the burden of proof has met that burden. The question of standing, however, is a gatekeeping question and requires consideration solely of the quantity and quality of evidence the plaintiffs have presented, not the comparative weight of the plaintiffs' testimony and the defendants'.[7] See *Jepson* v. *Zoning Bd. of Appeals of Ipswich*, 450 Mass. 81, 88 (2007), quoting from *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. at 27-28 (standing is established by "a plausible claim" that the proposed action will violate a private right the plaintiff possesses); *Butler* v. *Waltham*, 63 Mass. App. Ct. at 441-442 ("When the judge determines that the evidence is both quantitatively and qualitatively sufficient, however, the plaintiff has established standing and the inquiry stops. . . . [T]he plaintiffs are not required to persuade the judge that their claims of particularized injury are, more likely than not, true"). Nevertheless, the judge's thorough rejection of the plaintiffs' expert testimony amounts to a determination of qualitative insufficiency untainted by the judge's appraisal of the testimony's comparative weight.[8]

*Judgment affirmed.*

[6]For example, he wrote, "Unlike Brooks, I found [defense appraisal expert] Durkin's evidence generally persuasive, well-supported, and credible. . . . From this I gain further assurance that Durkin's expert opinion is correct and the competing evidence from the plaintiffs simply is not." He also noted that the testimony of the defendants' witness on emissions was "thorough, believable, and well-founded."

[7]That is not to say, however, that a fact finder would be prohibited from using the testimony of a defense expert to determine whether any reasonable person could rely on the testimony of the plaintiffs' expert. The question whether any reasonable person could rely on a particular opinion is very different from the question which competing opinion is entitled to greater weight. Cf., e.g., *Commonwealth* v. *Lanigan*, 419 Mass. 15, 25-26 (1994).

[8]The defendants' request for costs of the appeal pursuant to G. L. c. 211A, § 15, is denied, as the plaintiffs' arguments, although ultimately unpersuasive, are not frivolous. See, e.g., *Cooper* v. *Cooper*, 62 Mass. App. Ct. 130, 144 (2004).