Leibensperger, Edward P., J.
New Cingular Wireless PCS, LLC (“Cingular”) moves to dismiss the complaint on the ground that plaintiff, David A. Walko, lacks standing to assert the claim and, thus, the court lacks jurisdiction over the subject matter. Mass.R.Civ.P. 12(b)(1). Walko brings this action against the Town of Lexington Board of Appeals, its individual members and Cingular seeking judicial review, pursuant to G.L.c. 40A, §17, of a zoning decision, dated July 11, 2011, by the Board.[1]
*296 BACKGROUND
The following facts are taken from the complaint and the decision of the local Board of Appeals attached to the Complaint.
Walko is a resident and owner of a condominium unit (Unit 460) at 1475 Massachusetts Avenue, Lexington, Massachusetts (the “Property”). The Property is within a single-building condominium complex housing over 100 individuals. Walko lives on the uppermost residential floor. Immediately above that floor is a rooftop cupola. The cupola contains a Wireless Communications Facility (“WCF”).
The decision by the Board granted a petition by Cingular for a special permit under the Town’s zoning bylaws to allow modifications of the WCF. The proposed modifications to the existing WCF are to install the following new equipment at the site:
Three (3) new panel antennas inside existing cupola
Six (6) new remote radio heads inside existing cupola
One (1) new surge arrestor inside existing cupola
One (1) new radio-base station (RBS) rack inside existing equipment room
New fiber and DC power cables routed from the new equipment to new antennas
(the “Modifications”). Walko contends that the Board’s approval of the special permit exceeded its authority and was otherwise contrary to law, unsupported by substantial evidence, arbitrary, capricious and based on unlawful procedure.
With respect to Cingular, Walko alleges that it failed to comply with a number of procedural requirements with respect to its petition. In addition, Walko alleges that Cingular failed to demonstrate that the modification would operate within applicable FCC limits for radio frequency (“RF”) emissions and, when properly calculated, the maximum permissible exposure from the Modifications would exceed FCC and Massachusetts Department of Health limits. At the hearing before the Board, Walko also presented a letter from his heart doctor regarding Walko’s episodes of atrial fibrillation which Walko believes may be related to the wave frequency emitted by the existing antenna that is less than 40 feet away from occupied space in Walko’s condominium unit. Walko’s doctor opined that he cannot establish a relationship between the waves frequency exposure and the recurrent episodes, but he cannot exclude such a relationship either.
In its decision, the Board concluded that Cingular’s plan “shall comply” with FCC regulations regarding emissions of electromagnetic radiation. The Board relied upon a certification from Cingular that the proposed facility “would comply” with all applicable federal and state laws and regulations, including regulations pertaining to RF emissions.
DISCUSSION
A. Standing Requirement
Standing of a plaintiff is jurisdictional and may properly be challenged by way of a Rule 12(b)(1) motion. Indeck Maine Energy, LLC v. Commissioner of Energy Resources, 454 Mass. 511, 516 (2009). Absent standing to challenge a zoning decision by a town’s zoning board of appeals, the court has no jurisdiction to review the board’s decision. Only a person “aggrieved” by a decision of a permitting authority has standing to appeal the decision to the Superior Court under G.L.c. 40A, §17. Sweenie v. A.L. Prime Energy Consultants, 451 Mass. 539, 543 (2008).
An abutter to the property that is the subject of an application for a special permit is a defined “party in interest" under G.L.c. 40A, §11 and is, therefore, a presumptively “aggrieved” person. Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 721-22 (1996). In the present case it is conceded that Walko is an abutter to Cingular’s WCF. Walko’s presumption of standing is, however, rebuttable. If standing is challenged, and evidence is offered in support of such challenge warranting a finding contrary to the presumed fact of aggrievement, the presumption of standing is lost and the burden to demonstrate standing rests with the plaintiff. Kenner v. Zoning Bd. of Appeals of Chatham, 459 Mass. 115, 118 (2011).
In reviewing a motion to dismiss for lack of subject matter jurisdiction under Mass.R.Civ.P. 12(b)(1), the factual allegations of plaintiffs complaint are accepted as true, along with any favorable inferences reasonably drawn therefrom. Ginther v. Commissioner of Insurance, 427 Mass. 319, 322 (1998). The court may also consider affidavits and other matters outside the complaint. Id. at 322 n.6. The jurisdictional question is then decided on “all the evidence” but the plaintiff need not prove, for standing purposes only, the ultimate merit of his claims. Instead, he must put forth “credible” evidence to substantiate his allegations. Kenner, 459 Mass. at 118. Credible evidence “has both a quantitative and a qualitative component.” Butler v. City of Waltham, 63 Mass.App.Ct. 435, 441 (2005) (finding of no standing after trial). “Quantitatively, the evidence must provide specific factual support for each of the claims of particularized injury the plaintiff has made [and] [qualitatively, the evidence must be of a type on which a reasonable person could rely to conclude that the claimed injury likely will flow from the board’s action.” Id. Determination of standing is a fact issue for the court. Kenner, 459 Mass. at 119.
B. Consideration of standing on a Rule 12(b)(1) motion
Walko contends that fundamental precepts of Due Process require that an evidentiary hearing take place in order for the court to find facts sufficient to determine the standing issue. Alternatively, Walko suggests that the court should treat the Rule 12(b)(1) motion as one for summary judgment under Rule 56. See, Standiwick *297 v. Zoning Bd. of Appeals of Andover, 447 Mass. 20, 35-37 (2006). In that regard, Walko has moved for discovery in aid of proving the jurisdictional question.[2]
Cingular, on the other hand, elects to proceed with its Rule 12(b)(1) motion at the outset of the case, before any discovery has taken place, and in lieu of an evidentiary hearing. Cingular argues that the affidavits it has submitted, as well as the decision of the Board, demonstrate that Walko’s claims of personal aggrievement from the decision are “wholly speculative.” Cingular relies on the affidavits of its expert physicist, Donald L. Haes, Jr., for the conclusion that the proposed Modifications are compliant with federal and state regulations and “should be considered safe.” Cingular’s approach is not without precedent. In at least one case, Sweenie v. A.L. Prime Energy Consultants, cited supra, the Supreme Judicial Court affirmed the allowance of a motion to dismiss under Mass.RCiv.P. 12(b)(1) based upon affidavits and exhibits submitted by defendants addressing each of the plaintiffs’ claimed adverse impacts.[3]
It is beyond doubt that Cingular’s filings satisfy its burden of offering evidence to rebut Walko’s presumption of standing. The question then becomes whether Walko’s evidence, in the form of his complaint, affidavit and the Board’s decision, is sufficient to proceed.
As referenced above, the Supreme Judicial Court in the Kenner case made it clear that a plaintiff does not have to prove that his claims are ultimately meritorious to sustain his standing. In Kenner, there was an eviden-tiary hearing (trial) solely on the issue of standing that provided the trial judge with sufficient information to make findings of fact. ‘Whether a party is ‘aggrieved’ is a matter of degree . . . and the variety of circumstances which may arise seems to call for the exercise of discretion rather than the imposition of an inflexible rule.” Kenner, 459 Mass. at 119 (quoting Paulding v. Bruins, 18 Mass.App.Ct. 707, 709 (1984)). In exercising that discretion in this case, the court must balance the strength of Cingular’s evidence against the potential unfairness to Walko of deciding the standing issue without opportunity for discovery, possible development of expert testimony and, perhaps, an evidentiary hearing.
That said, Walko has the burden even at this stage of the proceeding to come forward with specific facts in support of his standing. “Individual. .. property owners acquire standing by asserting a plausible claim of a definite violation of a private right, a private property interest, or a private legal interest.” Harvard Sq. Defense Fund, Inc. v. Planning Bd. of Cambridge, 27 Mass.App.Ct. 491, 492-93 (1989) (emphasis added), quoted with approval in Kenner, 459 Mass. at 120.
Given the above, the court will examine the materials submitted by Walko, including Walko’s affidavit, to evaluate whether he has put forth a plausible claim based upon specific facts, and not upon speculative, personal opinion, showing that his alleged injury is special and different from the concerns of the rest of the community and that his concerns are within the scope of the zoning bylaws. Barvenik v. Bd. of Alderman of Newton, 33 Mass.App.Ct. 129, 132 (1992). A plausible claim, at this stage, warrants denial of the motion to dismiss. If, after discovery, Walko’s claims cannot satisfy the standards for opposing summary judgment (e.g., if it is determined that expert evidence is required to support his claim and no expert is identified) then summary judgment may be appropriate. The court could also determine that an evidentiary hearing is necessary, either separate or combined with trial on the merits, to decide the standing issue.[4]
C. Plausibility of Walko’s claim
There are two predicates for Walko’s claim of unique injury to his private legal interest. The first is based on his proximity to the WCF. The second is based on the calculations of emissions of RF and whether or not such calculations, correctly done, are within the presumptively safe federal guidelines.
Unlike the community in general, or even the other abutters in the condominium building, Walko’s condominium unit is on the uppermost residential floor, immediately below the cupola containing the WCF. Walko asserts that the “nearest promt regularly occupied by me in relation to New Cingular’s project is closer to 24 feet away from” the WCF. Walko Affidavit, ¶27. Walko claims that his unit is within the “zone of danger” calculated by Cingular in its Maximum Permissible Exposure Study submitted with its application.
Those specific facts lay the groundwork for the claim of a violation of a private right — namely, the right to be free from the danger of harm to one’s health imposed by another — that is within the scope of the Board’s consideration of the special permit under the Town’s zoning bylaws.[5] The bylaws, in fact, permit the Board to regulate the use of wireless communication facilities in a manner to minimize adverse impact on a resident with regard to “general safety, welfare and quality of life in the community.” Walko Affidavit ¶7. The Board considered whether the Modifications would constitute a “demonstrable adverse impact” resulting from “[ejmission or discharge of noxious or hazardous materials or substances.” The Board granted the special permit because, on this issue, “(t]he applicant certifies the proposed use will produce no emission or discharge of noxious or hazardous materials or substances.” Complaint, Ex. A, Decision, p. 6. Thus, Walko’s concerns as an abutter with close proximity to the WCF regarding emissions of RF is a personalized claim regarding his own legal interest that the zoning bylaw was intended to protect.
Cingular argues, however, that Walko’s concern regarding emission of RF is speculative and based on mere personal opinion. While it is correct that Walko, at this stage of the proceeding, offers no expert testimony, his complaint and affidavit allege specific facts regarding Cingular’s calculation of impact from RF emissions. Walko notes that Cingular’s plans admit that the WCF will emit “high levels of electromagnetic radiation” and *298 warn that “personal RF exposure monitors are advised to be worn to alert of any dangerous exposure levels.” Walko Affidavit, ¶9. The Board’s decision also notes Cingular’s plan to “continuously monitor[ed]” the site for RF emissions. Complaint, Ex. A, Decision, p. 5. Walko goes on to allege that Cingular erred in its calculation of RF radiation by, for example, measuring distances from the proposed antenna from the center of the antenna rather than from the lowest transmitting surface. “New Cingular did not calculate exposure limits to the place where people are . . .” Walko Affidavit, ¶¶23-27. A number of other alleged miscalculations or lack of appropriate calculations are also alleged. Id. at ¶¶ 17-23. In conclusion, Walko states “(o]n information and belief, Radio-Frequency Radiation levels change in relation to the square of the distance from the source; thus even using an approximation of the distance to the nearest occupied space made plain in the plan submitted with the Application, the Maximum Permissible Exposure for this application would appear to be well in excess of applicable FCC and Massachusetts Department of Health limits.” Walko Affidavit, ¶31.
Cingular submits two affidavits from its expert, Donald L. Haes, Jr., that rebut Walko’s allegations regarding miscalculations. He concludes that the proposed Modifications will comply with all applicable FCC and state regulatory guidelines for RF. Thus, the courtis presented with an “expert” opinion from Cingular and a “lay” opinion from Walko based on facts the court must accept as true on this motion. A determination of standing requires the court to make findings of fact.
On this record, and at this stage of the litigation, Walko asserts “plausible” claims that are beyond mere speculation. Fundamental fairness dictates that he be given the opportunity to take discovery and to develop expert testimony or affidavits to support his contentions. Whether Walko’s case can be sustained beyond summary judgment or at trial on the issue of standing is an open question.
CONCLUSION
For the reasons stated above, Cingular’s motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), is DENIED. Discovery may proceed in accordance with the tracking deadlines.

The Board and its individual members have not submitted to the court any position on Cingular’s motion. If Cingular’s motion is granted, the complaint would be dismissed in its entirety as to all defendants.

Plaintiff has also moved to strike the affidavits of Cingular’s expert witness, Donald L. Haes. In light of the disposition of Cingular’s motion and the fact that discovery may ensue in the normal course, there is no need to act on those motions.

On the other hand, many of the cases deciding standing of an aggrieved person under G.L.c. 40A, §17 are decided after an evidentiary hearing or upon summary judgment. See e.g., Kenner, 459 Mass. at 116 (trial); Marashlian, 421 Mass. at 720 (trial); Bell v. Zoning Bd. of Appeals of Gloucester, 429 Mass. 551, 555 (1999) (summary judgment); Cohen v. Zoning Bd. of Appeals of Plymouth, 35 Mass.App.Ct. 619, 622 (1993) (summary judgment).

Mass.R.Civ.P. 12(d) gives the court discretion to defer the hearing and determination of a Rule 12(b)(1) motion until trial.

Cingular argues that Walko’s complaint must be dismissed because federal law prohibits the Board from regulating based upon the effect of RF emissions. The argument misses the point of Walko’s claim and overstates the law. Walko is not contesting the federal standards for permissible RF emissions nor is he contending that the Board should apply a different standard. Instead, Walko’s claim is that Cingular’s application for the special permit failed to demonstrate compliance with federal and state standards. Acceptance of Cingular’s argument would effectively require a Board to simply accept an applicant’s assertion of compliance with federal regulation without inquiry or analysis. The applicable federal statute, 47 U.S.C. §332(c)(7), explicitly provides that “nothing in this chapter shall limit or affect the authority of a State or local government . . . over decisions regarding the placement, construction, and modification of personal wireless service facilities” except that the local government may regulate on the basis of environmental effects of radio frequency emissions only “to the extent that such facilities comply with the Commission’s regulations concerning such emissions.” No authority has been provided by Cingular to suggest that the local government cannot evaluate and make a determination as to whether the applicant’s plan complies, in fact, with FCC regulations. An aggrieved party under G.L.c. 40A, §17 is entitled to de novo review in the Superior Court of a Board’s decision in this regard. See Roberts v. Southwestern Bell Mobile Systems, Inc., 429 Mass. 478, 482 (1999).